605 F.Supp. 421 (1985)
Barbara G. HOLLENBECK, Administratrix of the Estate of Virginia M. Gutting, Deceased, Plaintiff,
v.
FALSTAFF BREWING CORPORATION, Defendant.
No. 81-0791 C (4).
United States District Court, E.D. Missouri, E.D.
September 6, 1984.
On Application February 20, 1985.
As Amended February 28, 1985.
*422 *423 *424 *425 David G. Dempsey, Shifrin, Treiman, Barken, Dempsey, & Ulrich, St. Louis, Mo., for plaintiff.
Theodore F. Schwartz, St. Louis, Mo., Joseph L. Alioto, Alioto & Alioto, San Francisco, Cal., for defendant.
On Application For Attorney's Fees February 20, 1985.

MEMORANDUM, FINDINGS OF FACT, and CONCLUSIONS OF LAW
CAHILL, District Judge.
This case has a long judicial history and pedigree. It essentially involves the rights of the litigants to proceeds from a death benefit plan that Falstaff had adopted for several of its executives. The plan is known as the "CBS Plan." Under the CBS Plan, Falstaff purchased life insurance policies on the individual lives of the executives that were covered by the Plan. At the death of a covered executive, the Plan provided that the executive's beneficiaries *426 would receive the proceeds of the life insurance policy minus the amount of premiums paid by Falstaff and three percent interest on those premiums. Ferdinand Gutting was one of the Falstaff executives who was covered by the CBS Plan. In early 1975 Paul Kalmanovitz purchased a controlling interest in Falstaff. Shortly after Kalmanovitz's takeover, Gutting and several other Falstaff executives left Falstaff's employ.
Gutting died in 1980 and his widow made a claim for the benefits under the CBS Plan shortly thereafter. Falstaff, however, did not pay the CBS Plan benefits to Gutting's widow. Defendant argues that Gutting's beneficiaries have no right to any benefits under the terms of the CBS Plan. Paragraph 6 of the plan provides:
All payee's benefits payable under the terms of this agreement shall be forfeited if ... he ... is discharged for proper cause.
As used in this agreement, the term "proper cause" shall include, but not be limited to (1) failure to perform assigned duties with reasonable skill and diligence, (2) gross misconduct, or (3) conviction of a felony.
Defendant asserts that it fired Gutting for proper cause and therefore under paragraph 6 of the CBS Plan, Gutting forfeited the benefits of the Plan. Among the reasons defendant gave as constituting proper cause for Gutting's dismissal are Gutting's alleged: (a) involvement in paying a large sum of money to a Louisiana state legislator under suspicious circumstances, (b) failure to stop payments of improper rebates to retailers (known in the industry as "black-bagging"), (c) acquiesence in Falstaff's violation of federal alcohol laws, and (d) fraudulent failure to disclose in a financial statement that Falstaff had mortgaged nearly all of its assets. Plaintiff disagrees that Gutting was fired for proper cause. Plaintiff contends that Falstaff fabricated these "reasons" as a convenient way to avoid paying benefits to Gutting's beneficiaries under the CBS Plan.
Plaintiff has sued defendant in two counts. Count I purports to state a cause of action under the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001-1461 (1976) (ERISA), for the recovery of benefits under the CBS Plan. Count I specifically alleges that Gutting was not fired for cause, and even if he was fired for cause, the forfeiture provision of the CBS Plan is unenforceable under ERISA. See 29 U.S.C. §§ 1103 & 1106. Count I seeks $375,000 in compensatory damages (the estimated amount of the death benefits payable under the CBS Plan) and $4,000,000 in punitive damages. Count II purports to state a cause of action for breach of fiduciary duties under Missouri common law. Count II also seeks $375,000 in compensatory damages (the estimated amount of the death benefits under the CBS Plan) and $4,000,000 in punitive damages.
In 1982, summary judgment was entered against plaintiff in this case. 541 F.Supp. 345. Plaintiff's former counsel had failed to answer defendant's requests for admissions on time. One of the defendant's requests asked plaintiff to admit that Gutting was fired for cause. Because of plaintiff's counsel's failure to file timely responses, the district court ruled that defendant's requests for admissions could be deemed as admitted. Shortly thereafter, the district court entered summary judgment finding that plaintiff had admitted that Gutting had been fired for cause and that the forfeiture clause was not rendered unenforceable by ERISA, 29 U.S.C. §§ 1053, 1103, or 1106. Plaintiff appealed. The Eighth Circuit reversed and remanded. The Eighth Circuit specifically vacated the original district court's summary judgment regarding the effect of ERISA on the CBS Plan and requested that the district court hold further rulings on ERISA issues in abeyance "until such time as it becomes necessary to decide that question." See Gutting v. Falstaff Brewing Corp., 710 F.2d 1309, 1312 n. 4 (8th Cir.1983). On remand, the case was transferred to this Court.
After remand, the parties asked the Court to decide several issues of law concerning *427 the effect of ERISA on the CBS Plan. The Court has heeded the Eighth Circuit's request and abstained from ruling on these issues. See Gutting v. Falstaff, No. 81-791-C(4), mem. op. at 2-3 (E.D.Mo. Dec. 2, 1983). Now that the case has been tried, the Court finds that it is necessary to resolve several key legal issues concerning ERISA. The Court also wishes to address several other important legal issues that were raised during trial. The foremost issue, however, is whether the CBS Plan is governed by ERISA, and if so, to what extent does ERISA provide the applicable rules of decision for this case.

I. Applicable Rules of Decision.

The scope of ERISA's coverage is defined in 29 U.S.C. § 1003. ERISA applies to any "employee benefit plan if it is established or maintained (1) by any employer engaged in commerce or in any industry or activity affecting commerce...." It is beyond peradventure that Falstaff was and is engaged in activities "affecting commerce." Thus, the key question is whether the CBS Plan is an "employee benefit plan." Section 1002(3) defines "an employee benefit plan" as "an employee welfare benefit plan or an employee pension benefit plan or a plan which is both...." In pertinent part, the term "employee welfare benefit plan" is defined as
Any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer ... to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance ..., benefits in the event of ... death....
This definition describes with perfect acuity the CBS Plan which Falstaff established and maintained through the purchase of insurance to provide death benefits for the beneficiaries of several of its employees. Therefore, it is apparent to this Court that the CBS Plan is an employee welfare benefit plan within the coverage of ERISA.[1]
In contending that the CBS Plan is not covered by ERISA at all, the defendant at various times has asserted that the substantive ERISA provisions that plaintiff relies on to render the forfeiture clause unenforceable did not become effective until at least 1976. Defendant argues that Gutting was fired and forfeited his benefits in 1975, before these substantive ERISA provisions became effective. Therefore, defendant contends that ERISA cannot be applied retroactively to govern this case. Defendant also maintains that this is how the original district court had ruled in its 1982 order granting summary judgment.
For several reasons, defendant's argument lacks merit. First, whatever the import of the original district court's order granting summary judgment, the Eighth Circuit specifically vacated the district court's ERISA rulings in that order. See Gutting v. Falstaff Brewing Corp., 710 F.2d at 1312 n. 4. Second, plaintiff has abandoned her reliance on 29 U.S.C. § 1053 which did not become effective for the CBS Plan until January 1, 1976. Section 1053 of Title 29 outlaws "bad boy" clauses; that is, clauses which require accrued benefits to be forfeited if the employee is fired for cause or obtains employment with a competitor. Instead, plaintiff only relies on 29 U.S.C. § 1103(c)(1) and § 1106(a) & (b), both of which became effective on January 1, 1975.[2]See 29 U.S.C. § 1114(a). Neither *428 party contends that plaintiff's cause of action accrued before January 1, 1975. Third, ERISA's coverage, jurisdiction, and preemption provisions became effective on or before January 1, 1975. See 29 U.S.C. §§ 1003, 1052, § 1144. Taken together, these three provisions vest jurisdiction in federal courts over causes of action relating to ERISA plans that accrue on or after January 1, 1975. They also mandate that those causes of action must be resolved exclusively under a uniform body of federal law. Congress clearly expressed that this mandate included the authority and responsibility to create federal common law where there are interstices in the substantive provisions of ERISA. See Dependahl v. Falstaff Brewing Corp., 653 F.2d 1208, 1216 (8th Cir.1981); Landro v. Glendenning Motorways, 625 F.2d 1344, 1351 (8th Cir.1980). Accord Thornton v. Evans, 692 F.2d 1064, 1079 (7th Cir.1982); Murphy v. Heppenstall Co., 635 F.2d 233, 237 (3d Cir.1980). Thus, for causes of action accruing in the gap period between January 1, 1975, and the effective date of an otherwise applicable substantive ERISA provision, the general federal law of ERISA still governs the action, as long as the action "relates to" "an employee benefit plan" within the meaning of §§ 1003 and 1144. See Amory v. Boyden Assoc., 434 F.Supp. 671, 672-73 (S.D.N.Y.1976). See also Flynn v. Aetna Casualty & Surety Co., 698 F.2d 758, 759 (5th Cir.1983), affirming 558 F.Supp. 861, 864-65 (N.D.Tex.1982); Woodfork v. Marine Cooks & Stewards Union, 642 F.2d 966, 972-73 (5th Cir.1981); Lee, ERISA's "Bad Boy:" Forfeiture for Cause in Retirement Plans 9 Loy.Unv.L.J. 137, 168-173 (1977). Again, neither party contends that plaintiff's cause of action accrued before January 1, 1975. Accordingly, this Court holds that ERISA, and its supporting federal common law, provide the applicable rules of decision to resolve all disputes between these litigants that relate to the CBS Plan. Dependahl, 653 F.2d at 1216, cf. Cowan v. Keystone Employee Profit Sharing Plan, 586 F.2d 888, 892-94 (1st Cir.1978).
Defendant's major defense in this case is that Gutting's beneficiaries are not entitled to the death benefits of the CBS Plan because Gutting was fired for "proper cause" and thereby forfeited his death benefits. In enacting ERISA, Congress was deeply concerned over the use of such "bad boy" clauses to forfeit an employee's vested ERISA benefits. See Winer v. Edison Brothers Stores Pension Plan, 593 F.2d 307, 310-11 (8th Cir.1979). In accordance with Congress' strong policy against the use of bad boy clauses, federal courts have subjected bad boy clauses to a rigorous reasonableness test as a matter of federal common law whenever the substantive nonforfeiture provisions of ERISA are not applicable. See e.g., Flynn, 558 F.Supp. at 864-65, aff'd 698 F.2d 758 (5th Cir.1983). As part of this federal common law rule of reasonableness, a presumption is raised that use of bad boy clauses to forfeit ERISA benefits is unreasonable. Of course, this presumption is rebuttable, but defendant bears the burden of proving that the factual prerequisites of the bad boy clause have been met and that use of the bad boy clause to forfeit plaintiff's ERISA benefits based on those facts is reasonable. See, e.g., Amory, 434 F.Supp. at 673. Because plaintiff's cause of action arose after January 1, 1975, and 29 U.S.C. § 1053 is not otherwise applicable, the Court will follow the federal common law rule of reasonableness in reviewing Falstaff's affirmative defenses.

II. Pre-emption.

Count II of plaintiff's amended complaint purports to state a cause of action for breach of fiduciary duties under Missouri common law. However, under 29 U.S.C. § 1144, ERISA preempts "any and all state laws insofar as they ... relate to any employment benefit plan...." Save for a few limited exceptions not applicable here, ERISA broadly preempts any state and local regulation of employee benefit plans. Alessi v. Raybestos-Manhattan, Inc., 451 U.S. 504, 525, 101 S.Ct. 1895, 1907, 68 L.Ed.2d 402 (1981); Landro, 624 F.2d at 1351. The state law at issue need *429 not specifically concern subjects covered by ERISA to be preempted. Alessi, 451 U.S. at 525, 101 S.Ct. at 1907; Pervel Industries, Inc. v. Connecticut Commission on Human Rights, 468 F.Supp. 490, 492 (D.Conn.1978), aff'd 603 F.2d 214, cert. denied, 444 U.S. 1031, 100 S.Ct. 701, 62 L.Ed.2d 667 (1980). Rather, even a state's general common law will be preempted by ERISA if, in its present application, the common law "relates to" an employee benefit plan. Dependahl, 653 F.2d at 1215-16; Woodfork, 642 F.2d at 970; Ogden v. Michigan Bell Telephone Co., 571 F.Supp. 520, 523-24 (E.D.Mich.1983) (state common law fraud cause of action is preempted by ERISA); Missouri ex rel. Montgomery Ward & Co. v. Peters, 636 S.W.2d 99, 101-02 (Mo.App.1982) (Peters) (cause of action for breach of fiduciary duties under Missouri common law is preempted by ERISA). See also Dairy Industry and Allied Foods of St. Louis, Missouri Employees' Union Pension Fund v. The Manufacturers Life Insurance Co., No. 82-1873-C(4) mem. op. at 2-4 (E.D.Mo. Sept. 14, 1983) (Missouri common law breach of fiduciary duty cause of action is preempted by ERISA). As the Supreme Court has said: "A law `relates to' an employee plan, in a normal sense of the phrase, if it has a connection with or reference to such a plan." Shaw v. Delta Airlines, Inc., 463 U.S. 85, 103 S.Ct. 2890, 2900-91, 77 L.Ed.2d 490 (1983). In other words, if state common law is being relied upon to resolve a dispute over the litigants' rights and obligations that have their genesis in an employee benefit plan, then that common law is preempted by ERISA.
The Missouri common law principle that plaintiff invokes in Count II is that Falstaff tortiously breached its fiduciary duty by failing to pay the CBS Plan benefits to Gutting's beneficiaries when Falstaff was obligated to pay the benefits under the terms of the CBS Plan. Thus, the specific obligation that plaintiff seeks to enforce via Missouri's common law torts was created and is determined by the CBS Plan. Accordingly, no other conclusion can be drawn but that the Missouri common law which plaintiff relies on in Count II "relates to" an employee benefit plan covered by ERISA.
Plaintiff has argued strenuously that Count II cannot be preempted because Congress certainly did not intend to leave a victim of fraud or outright theft from an ERISA plan without some remedy to redress these serious wrongs. This argument misperceives the effect and purpose of federal preemption of state law. At the same time that ERISA preempts the field of state and local regulation of ERISA plans, ERISA also provides new uniform federal rules of decision which replace the 50 different regulatory systems that existed prior to ERISA. In fact, Congress considered federal preemption and replacement of conflicting and inconsistent state regulations as the "crowning achievement" of ERISA. 120 Cong.Rec. at 29,197 (statement of Congressman Dent). See also Hutchinson & Ifshin, Federal Preemption of State Law Under the Employee Retirement Income Security Act of 1974, 46 U.Chi.L.Rev. 23, 35-43 (1978). Thus, preemption does not eradicate a fraud or theft victim's remedies; rather, it only directs the victim to federal law for the source of his remedies. In this case, any number of ERISA's substantive provisions, or the federal common law of ERISA, could have been invoked by plaintiff to redress the wrongs of which she complained in Count II. Ready examples are provided by the provisions plaintiff relied upon in Count I, as well as 29 U.S.C. § 1109. Although the Court might be able to recouch Count II as an ERISA cause of action, the Court will not do so for two reasons. First, plaintiff was adamant that Count II must be heard under Missouri law, even when faced with defendant's argument, and this Court's concern, that Count II would be preempted by ERISA. Second, as an ERISA claim, Count II would be redundant of Count I. Both counts allege the same essential acts and pray for the exact same damages. Therefore, the Court will simply grant defendant's oral motion to strike Count II as preempted by ERISA and permit plaintiff to proceed under Count I. See Zittrouer v. *430 Uarco, Inc. Group Benefit Plan, 582 F.Supp. 1471, 1477-78 (N.D.Ga.1984) (per Hall, J.) (following same procedure).

III. Jury Trial.

Defendant had originally demanded a jury trial in its initial answer. Defendant's answer, however, denied that this case is governed by ERISA. No challenge to the jury demand was made prior to the day of trial, even though Eighth Circuit precedent indicated that ERISA actions are not triable by a jury. See In re Vorpahl, 695 F.2d 318, 319-22 (8th Cir.1982). Under Fed.R. Civ.P. 39(a), when a jury trial has been demanded, "the trial of all issues so demanding shall be by jury unless ... (2) the court ... of its own initiative finds that a right of trial by jury of some or all of those issues does not exist under the Constitution or statutes of the United States." (Emphasis added.) On the day of trial, the Court took that initiative in this case by asking the parties to explain their positions as to whether the case could be tried to a jury.
The defendant explained that its position throughout this case was that this was not an ERISA case, but merely a state law action for breach of contract. Thus, believing that this was a state law contract case, defendant demanded a jury trial on plaintiff's state law breach of contract cause of action. Defendant went on to clarify its position by stating that if the Court decided this case was governed by ERISA, then defendant objected to a jury trial because (1) defendant had not demanded a jury trial for an ERISA claim, and (2) there is no right to a trial by jury for ERISA claims.
Plaintiff's position was equally equivocal. Plaintiff did not strongly contest that she had no right to a jury trial on her Count I ERISA claim. But plaintiff did argue strenuously that she had a right to a jury trial under Count II because Count II was a state law cause of action for breach of fiduciary duties which is triable by jury. Defendant's response was that if the CBS Plan was governed by ERISA, then ERISA preempted plaintiff's state law cause of action in Count II and Count II must be stricken. Plaintiff disagreed.
The key to resolving these conflicting positions was to decide whether this case was governed by ERISA. The Court, cognizant of the Eighth Circuit's admonition not to decide any ERISA issues until it became absolutely necessary, accepted the suggestion that the case be tried to an "advisory jury." See Fed.R.Civ.P. 39(b). This procedure left the Court several options. For example, if the Court ruled that the whole case was governed by ERISA and also found that there is no right to a jury under ERISA, the Court could treat the jury's verdict as advisory and issue its own findings of fact and conclusions of law. On the other hand, if the Court ruled that only Count I was governed by ERISA and found that there was no right to a jury trial under ERISA, the jury verdict could stand as to Count II and would be advisory as to Count I. This procedure was a reasonable accommodation between the parties' equivocal arguments and the Eighth Circuit's concern that ERISA issues be decided as a last resort. Now that the trial has been completed and the Court has decided that the entire case is governed by ERISA, the Court will rule on the two issues it presented to the parties prior to trial. First, is there a right to a jury trial under ERISA? Second, if not, have the parties agreed by mutual consent to a trial by jury under Fed.R.Civ.P. 39(c)?
As a general matter, the clear weight of authority holds that there is no right to a jury trial in actions brought pursuant to 29 U.S.C. § 1132(a) of ERISA. See, e.g., In re: Vorpahl, 695 F.2d at 319-22; Hechenberger v. Western Electric Co., 570 F.Supp. 820, 822 (E.D.Mo.1983) (per Hungate, J.); Meyer v. Phillip Morris, 569 F.Supp. 1510, 1511 (E.D.Mo.1983) (per Nangle, J.). Accord Calamia v. Spivey, 632 F.2d 1235, 1236-37 (5th Cir.1980); Wardle v. Central States, 627 F.2d 820, 828-30 (7th Cir.1980).[3] Differences of opinion *431 arise in the caselaw, however, depending under which subsection of 29 U.S.C. § 1132(a) the case is brought. In her amended complaint, plaintiff generically invokes jurisdiction under § 1132, without specifying upon which particular subsection she specifically relies. From the nature of the allegations, it appears that Count I was brought under 29 U.S.C. § 1132(a)(1)(B) (suits brought by a beneficiary to recover ERISA benefits owed to him by the trustees of the ERISA plan).
The caselaw cited above supports the proposition that there is no right to a jury trial under § 1132(a)(1)(B). See also Brown v. Retirement Committee, 575 F.Supp. 1073, 1077 (E.D.Wisc.1983); Foulke v. Bethlehem 1980 Salaried Pension Plan, 565 F.Supp. 882, 883 (E.D.Pa. 1983). Cf. Peckham v. Board of Trustees, 653 F.2d 424, 426 n. 3 (10th Cir.1981) (dicta). Two cases have taken the opposite position, but they have been uniformly rejected by more recent decisions. See Pollock v. Castrovinci, 476 F.Supp. 606, 609 (S.D.N.Y.1979); Stamps v. Michigan Teamsters, 431 F.Supp. 745, 747 (E.D.Mich. 1977).
This Court concludes that neither party has a right to a jury trial under Count I. The cases cited above adequately articulate the Court's rationale for reaching this conclusion. Count I alleges that Falstaff, as trustee of the CBS Plan, forfeited the benefits owed to Gutting's beneficiaries under the CBS Plan. As will be more fully developed below, the issues raised by this complaint are essentially equitable. The fact that the alleged damages are a sum certain and are alleged to be unconditionally and immediately due, does not by itself convert the equitable nature of the issues into legal ones. Whether the monetary relief sought is actually owed in this case is inextricably bound to the equitable questions whether plaintiff is entitled to the benefits and whether the forfeiture clause of the CBS Plan is enforceable. These determinations have traditionally been left to the judge for resolution. See Vorpahl, 695 F.2d at 322; Kahnke v. Herter, 579 F.Supp. 1523, 1527-28 (D.Minn. 1984); Foulke, 565 F.Supp. at 883 (prayer for lump sum benefit did not convert essentially equitable claim into a legal one). Even if it is assumed that the nature of the damages sought in this case could convert the case into a legal action, the parties have stipulated to the amount of compensatory damages, thereby making submission of this "legal" issue to a jury anserine.
It might be argued that Count I is also brought under 29 U.S.C. § 1132(a)(2) for breach of Falstaff's fiduciary duties under § 1109. This would not change the Court's decision that there is no right to a jury trial, however. First, a brethren district judge within the Eighth Circuit has already ruled in a well reasoned and persuasive opinion that there is no right to a jury trial under § 1132(a)(2). See Kahnke v. Herter, 579 F.Supp. 1523, 1526-28 (D.Minn.1984). This Court adopts the Kahnke court's rationale, and rejects the rationale underlying Ovitz v. Jeffries & Co., 553 F.Supp. 300, 301 (N.D.Ill.1982). Second, the equitable nature of Count I's allegations are not altered by framing Count I as a breach of fiduciary duty cause of action under 29 U.S.C. § 1109. If Count I is read as alleging a violation of Falstaff's fiduciary duties under § 1109, Falstaff would be liable for such a breach of fiduciary duty only if the forfeiture clause of the CBS Plan is either inapplicable or unenforceable. Thus, the issue whether Falstaff breached its fiduciary duty is integrally dependent upon the question whether plaintiff is entitled to the benefits of the CBS Planan essentially equitable question. See Vorpahl, 695 F.2d at 322; Kahne, 579 F.Supp. at 1527-28. See also Zittrouer, 582 F.Supp. at 1477-78 (N.D.Ga. 1984). Thus, even if it could be argued successfully that Count I was brought under *432 28 U.S.C. § 1132(a)(2), the Court still is of the opinion that there is no right to try Count I to a jury under ERISA or the Seventh Amendment.[4]
The next issue is whether the parties have agreed to a trial by jury under Fed.R.Civ.P. 39(c). As noted above, defendant's position is that it did not demand a jury trial if this case is found to be governed by ERISA. Whatever the technical merits of this argument, it is clear that defendant did not, and would not, consent to a jury trial of plaintiff's ERISA cause of action. Therefore, the Court will view the jury's verdict as advisory under Fed.R. Civ.P. 39(b) and will issue its own independent findings of fact and conclusions of law.

IV. Collateral Estoppel.

In her reply to defendant's answer, plaintiff pleaded collateral estoppel as to two key factual issues. First, plaintiff notes that in SEC v. Falstaff Brewing Corp., No. 77-894, mem. op. (D.D.C. Oct. 26, 1978), aff'd 629 F.2d 62 (D.C.Cir.1980), the district court found that Kalmanovitz was personally liable for misleading statements and omissions in a 1975 proxy statement and for several other post-1975 violations of the federal securities laws. One specific finding made by the court was that Kalmanovitz personally knew that most of Falstaff's assets had been mortgaged, but that Kalmanovitz had permitted a 1975 proxy statement to be issued without disclosure of this fact. Plaintiff points out that defendant in this case is using Gutting's failure to disclose these mortgages to Kalmanovitz in a 1974 financial statement as one of the reasons for discharging Gutting for proper cause. In effect, plaintiff argues that defendant should be estopped from relitigating that Gutting's putative failure to disclose the mortgages to Kalmanovitz is a valid and true reason for invoking the forfeiture clause of the CBS Plan because that fact has been resolved against Falstaff in SEC v. Falstaff Brewing Corp., supra.
Second, plaintiff notes that defendant is also using Gutting's alleged responsibility for the putative gross misconduct of former Falstaff executives Charles Dependahl, William Healy, and John Calhoun as a separate reason for discharging Gutting for proper cause. In response, plaintiff cites to the findings of fact in Dependahl v. Falstaff Brewing Corp., 491 F.Supp. 1188 (E.D.Mo.1980), aff'd in part, rev'd in part, 653 F.2d 1208 (8th Cir.1981). Plaintiff asserts that the district court in Dependahl found that Dependahl, Healy, and Calhoun were not guilty of any gross misconduct or incompetence, but had been fired simply because of a change in management. Therefore, plaintiff contends, Gutting cannot be held accountable for misconduct that did not take place. Hence plaintiff argues that defendant should be estopped from relitigating that Gutting's putative responsibility for the alleged misconduct and incompetence of Dependahl, Healy, and Calhoun is a valid and true reason for invoking the forfeiture clause because that fact has been resolved adversely to the defendant in Dependahl v. Falstaff Brewing Corp.
Both of plaintiff's arguments fail when one inspects the law of offensive collateral estoppel. To successfully rely on offensive collateral estoppel, the plaintiff must establish that
(1) the issue at stake is identical to the one involved in the prior litigation;
*433 (2) the issue was actually litigated in the prior litigation;
(3) the determination of the issue in the prior litigation was a critical and necessary part of the judgment in that earlier action; and
(4) the offensive use of collateral estoppel in the subsequent case would not be unfair to the defendant. The first three elements of these four are those that must be established in the traditional defensive use of collateral estoppel. See Hicks v. Quaker Oats, 662 F.2d 1158, 1166 (5th Cir.1981). The fourth element was added by the Supreme Court in Park Lane Hosiery Co. v. Shore, 439 U.S. 322, 329-37, 99 S.Ct. 645, 650-54, 58 L.Ed.2d 552 (1979), as a precondition to offensive use of collateral estoppel, as plaintiff is seeking to do in this case. The trial court has broad discretion in permitting the offensive use of collateral estoppel. Id. at 331, 99 S.Ct. at 651. In exercising this discretion, the trial court must judge the concept of fairness based on the totality of the circumstances surrounding the prior and subsequent lawsuits. For example, if during the prior lawsuit the defendant could foresee the subsequent suit, it would not be unfair to allow offensive use of collateral estoppel in the subsequent suit because defendant would have had the incentive to vigorously litigate the issue in the prior lawsuit. Id. at 330, 99 S.Ct. at 651. On the other hand, if the defendant did not have the same procedural or evidentiary opportunities available to him in the prior lawsuit that he now has available to him in the subsequent suit, it would be unfair to allow the offensive use of collateral estoppel if the difference between the procedural or evidentiary opportunities is likely to cause a different result in the subsequent case. Id. at 330-31, 99 S.Ct. at 651-652.
It is clear from the recitation of these elements that plaintiff cannot rely on offensive use of collateral estoppel based on SEC v. Falstaff Brewing Corp. The factual issue plaintiff seeks to bar defendant from relitigating in this case is that Gutting's putative failure to disclose the mortgages on Falstaff's assets to Kalmanovitz in a 1974 financial statement can be a valid and true reason for invoking the forfeiture clause of the CBS Plan. This factual issue was never actually litigated in the SEC case. All the SEC case did determine was that Kalmanovitz knew that Falstaff's assets were mortgaged in early 1975 prior to the issuance of a 1975 proxy statement and that Kalmanovitz's failure to disclose this information violated federal securities laws. The parties' knowledge concerning the 1974 financial statements at issue here, was never even discussed in the SEC case. Plaintiff might be able to rely on offensive collateral estoppel to bar relitigation of the subsidiary factual issue that Kalmanovitz did not disclose the mortgages in 1975. Plaintiff may even extrapolate factual arguments based on this one subsidiary fact. But plaintiff cannot collaterally estop defendant from contesting plaintiff's extrapolated factual argument that Kalmanovitz cannot complain about Gutting's 1974 failure to disclose when Kalmanovitz himself committed the same sin in 1975.
Similarly, plaintiff cannot rely on the findings of fact in Dependahl v. Falstaff Brewing Corp. First of all, the district court in Dependahl never found as fact that Dependahl, Healy, or Calhoun did not engage in gross misconduct. In Dependahl, Falstaff relied on the affirmative defense that Dependahl, Healy, and Calhoun had been fired for cause because they had engaged in serious improprieties. But, Falstaff had failed to comply with discovery requests and the district court struck its affirmative defenses as a sanction. Thus the district court, although harboring doubts about the "bona fides" of the affirmative defenses, did not decide the issue because the affirmative defenses had been stricken. See Dependahl, 491 F.Supp. at 1193 (Finding of Fact 31). Secondly, even if the district court had found as fact that Dependahl, Healy, and Calhoun were not guilty of improprieties, it would be unfair to allow offensive use of collateral estoppel against the defendant in this *434 case. It would be unfair primarily because defendant did not have the same procedural or evidentiary opportunities to litigate these factual issues in the Dependahl case that it has in this case. In Dependahl, defendant's affirmative defenses had been stricken and plaintiff's request for admissions had been deemed admitted due to defendant's untimely responses. This significant difference in procedural and evidentiary opportunities could readily cause a different result in this case. In addition, it would be fundamentally unfair to punish defendant twice by barring it from relitigating factual issues based upon discovery abuses in an earlier case. Hence, plaintiff may not collaterally estop defendant from litigating the alleged improprieties of Dependahl, Healy, and Calhoun or Gutting's putative responsibility for their alleged improprieties.

V. Discovery Sanctions.

In its order of March 23, 1984, this Court left open the question of discovery sanctions. After the March 23rd order, both parties comported with the Federal Rules of Civil Procedure and the Local Rules of this Court. Therefore, the Court hereby denies plaintiff's motion for discovery sanctions and will not impose discovery sanctions against either party. It is hoped and expected that in the future both parties will behave as they did after the March 23rd order, and not as they had prior to the March 23rd order.

VI. Findings of Fact.

1. The Court expressly adopts the parties' stipulations of fact as the Court's Findings of Fact.
2. With the concurrence of the Executive Committee of Falstaff Brewing Corporation, and later the Board of Directors of Falstaff, Paul Kalmanovitz terminated Ferdinand Gutting as an active employee of Falstaff prior to Gutting's putative retirement on November 1, 1975.
3. Gutting's services were terminated because Paul Kalmanovitz wanted to replace the then-current management with executives more attuned to his style of business. As soon as Kalmanovitz found that Gutting did not fit into Kalmanovitz's style, Gutting's services were terminated.
4. Although Gutting may have been ultimately responsible for various alleged improprieties occurring during his tenure as chief executive officer of Falstaff, Kalmanovitz did not fire Gutting because of these improprieties. Kalmanovitz fired Gutting because of a difference in managerial style. Hence, the actual reasons that lead Kalmanovitz to fire Gutting did not constitute "proper cause" within the meaning of clause 6 of the CBS Plan.
5. Kalmanovitz did not fire Gutting in order to deny Gutting's beneficiaries the benefits of the CBS Plan.

VII. Conclusions of Law.

1. The Court expressly adopts the points addressed in parts I through IV, supra, as the Court's Conclusions of Law.
2. Virginia Gutting was a "beneficiary" of the CBS Plan within the meaning of 29 U.S.C. §§ 1002(8) & 1132(a)(1)(B).
3. Falstaff Brewing Corporation is the Plan's sponsor and trustee of the CBS Plan.
4. Even if a difference in managerial styles is construed to be "proper cause" for termination under clause 6 of the CBS Plan, this type of "proper cause" is too subjective to sanction the forfeiture of ERISA benefits. As noted above in Part I, the federal common law of ERISA requires some objective criteria by which the Court can judge whether defendant's invocation of a forfeiture clause is reasonable. See supra at 427-428. A major part of Congress's antipathy for "bad boy" clauses was that broad and subjectively based bad boy clauses could be used as a convenient subterfuge to deprive an employee of his pension benefits merely to save the employer the expense of paying those benefits. No employee is perfect, and so every employee could possibly be terminated for "proper cause." In order to prevent abuse of bad boy clauses, employers must prove that plaintiff was actually fired because of *435 some impropriety that would breach the business sensibilities of a hypothetical "reasonable" businessman. Obvious examples are cases in which plaintiff is fired because he committed some crime or gross misconduct that harmed his employer. Cf. Fremont v. McGraw-Edison Co., 606 F.2d 752, 755-56 (7th Cir.1979); Flynn v. Savings & Profit Sharing Plan, 558 F.Supp. 861, 865 (N.D.Tex.1982). But simple disagreement over business judgments, or even acts of incompetence, generally will be insufficient to meet the rigorous standard of reasonableness under federal common law. Certainly in this case it is not objectively reasonable to forfeit Gutting's beneficiaries' death benefits based upon the actual reasons that led defendant to fire Gutting. Even though Gutting may have been responsible for some gross misconduct, Gutting was actually fired over a difference in managerial style, or at most, a failure to perform his assigned duties in the way Kalmanovitz desired that they be performed. These actual reasons for Gutting's discharge are insufficient as a matter of federal common law to merit the forfeiture of his beneficiaries' death benefits that Gutting had a reasonable expectation his beneficiaries would receive. See cases cited supra at 428.
5. Virginia Gutting's estate, as Ferdinand Gutting's beneficiary, is entitled to the death benefits under the CBS Plan in the amount of $201,477.43.
6. Under federal common law, a trial court has the discretion to award prejudgment interest if the damages sought were previously liquidated, or an award of prejudgment interest is necessary to make the plaintiff whole. See Bricklayers' Pension Trust Fund v. Taiariol, 671 F.2d 988, 989-90 (6th Cir.1982) (holding as a matter of federal common law that prejudgment interest can be awarded in the Court's discretion under an ERISA cause of action); Washington v. Kroger Co., 671 F.2d 1072, 1078 (8th Cir.1982). The amount of prejudgment interest will be set at the rate which most equitably compensates plaintiff for the lost time-use of the money damages she recovers. Id. The Court concludes that plaintiff is entitled to prejudgment interest on her award of compensatory damages in this case. The amount of her damages was liquidated, or at least readily ascertainable, as of December 11, 1980, the earliest date that the death benefits were due. In order to compensate plaintiff for the lost use of the death benefits from that date until the date of judgment, the Court awards plaintiff prejudgment interest at the rate of nine (9) percent simple interest.
7. Count I of plaintiff's complaint prays for punitive damages. It is highly doubtful that the Eighth Circuit Court of Appeals would affirm an award of punitive damages in an ERISA case. See Dependahl v. Falstaff Brewing Corp., 653 F.2d 1208, 1217 (8th Cir.1981). Plaintiff, however, has cited Monson v. Century Manufacturing Co., 739 F.2d 1293 (8th Cir.1984), for the proposition that punitive damages are now recoverable in an ERISA case within the Eighth Circuit. But Monson does not hold, state, infer, or support the proposition that punitive damages are recoverable on an ERISA cause of action. The Monson case involved an employer's misrepresentations concerning an employee profit program (referred to by the district court as the "Program") and an independent employee pension plan (referred to by the district court as the "Plan"). As the district court opinion in Monson makes clear, only the employee pension plan was governed by ERISA, while the profit sharing program was not related to ERISA in any way. The district court awarded, and the Court of Appeals affirmed, punitive damages only as to the non-ERISA profit sharing program under the Minnesota common law of fraudulent misrepresentation. This state common law cause of action was not preempted by ERISA because it related to the parties' rights and obligations under the non-ERISA profit sharing *436 program, and not the ERISA pension plan. No punitive damages were awarded for any cause of action relating to the ERISA pension plan. See Monson v. Century Manufacturing Co., No. 4-80-Civil-614, mem. op. (D.Minn. May 17, 1983). Nonetheless, were this Court writing on a clean slate, it might well consider awarding punitive damages in an ERISA case appropriately based on a fiduciary's wanton or malicious breach of his fiduciary duties. See, e.g., Winterrowd v. David Freedman & Co., 724 F.2d 823, 826-27 (9th Cir.1984).
But even if this Court could award punitive damages under ERISA the Court would not do so in this case. First, plaintiff failed to produce any proof during its case-in-chief that defendant acted maliciously or in wanton disregard of plaintiff's rights to the benefits of the CBS Plan. Even the evidence brought forward during defendant's case in chief and plaintiff's rebuttal case was insufficient to warrant the award of punitive damages. The Court has previously found as fact that Gutting was fired of a difference in managerial style and that Falstaff did not fire Gutting or invoke the forfeiture clause maliciously or with wanton disregard of Gutting's beneficiaries' rights to receive the benefits of the CBS Plan. Thus, under the standard announced in Winterrowd, the Court in its discretion does not award punitive damages to the plaintiff in this case.

JUDGMENT AND ORDER
In accordance with the memorandum filed this day and incorporated herein,
IT IS HEREBY ADJUDGED, DECLARED, AND DECREED that the Court finds in favor of plaintiff Barbara G. Hollenbeck, as Administratrix of the Estate of Virginia M. Gutting, deceased, and against defendant Falstaff Brewing Corporation in the amount of $201,477.43 in compensatory damages plus prejudgment interest from December 11, 1980 to the date of this judgment at a rate of nine (9) percent simple interest.
IT IS FURTHER ORDERED that plaintiff's motion for discovery sanctions is DENIED.

On Application For Attorney's Fees
This matter is before the Court on the issue of plaintiff's application for attorney's fees and costs.
Plaintiff brought this suit alleging violations of the Employee Retirement Security Act (ERISA), 29 U.S.C. § 1132. After jury trial before this Court, verdict was rendered in favor of plaintiff, and plaintiff was awarded substantial monetary relief.
In the present motions, plaintiff seeks attorney's fees in the sum of $182,250.75. That sum represents a lodestar fee of $121,500.50 plus an enhancement of 50%. The statutory authority upon which plaintiff bases the claim for attorney's fees is 29 U.S.C. § 1132(g), which authorizes a court in its discretion to award reasonable attorney's fees and costs to either party in any action brought pursuant to section 502. Defendant argues that with the exception of one factor (defendant's ability to satisfy an award) plaintiff fails to meet the criteria enunciated by the Ninth Circuit in Hummel v. S.E. Rykoff & Co., 634 F.2d 446, 453 (9th Cir.1980), and is thus precluded from recovering attorney's fees in this matter. The Court disagrees with defendant, and finds that an award of attorney's fees is appropriate in this case.
In the first instance, this Court is of the opinion that the standards enunciated in Hummel, supra, were not intended to be an insurmountable barrier to a successful plaintiff's recovery of attorney's fees. Rather, the guidelines are to be used as an aid to the Court in exercising its discretion under Sec. 1132(g). Defendant's contention that plaintiff is precluded from a recovery of attorney's fees is therefore without merit.
In considering an award of attorney's fees the factors to be considered include:
1) the degree of the offending party's culpability and bad faith;
*437 2) the ability of the offending party to satisfy an award;
3) whether an award of attorney's fees would deter other persons from acting similarly under like circumstances;
4) the relative merits of the parties' positions; and
5) whether the action benefited a general class of beneficiaries of the fund.

Culpability and Bad Faith.
Under ERISA, a plaintiff need not show bad faith in order to recover attorney's fees. Ford v. New York Central Teamsters Pension Fund, 506 F.Supp. 180, 182 n. 3 (W.D.N.Y.1980); aff'd 642 F.2d 664 (2d Cir.1981); Landro v. Glendenning Motorways, Inc., 625 F.2d 1344 (8th Cir.1980); Baeten v. Van Ess, 474 F.Supp. 1324 (E.D.Wis.1979). Section 1132(g), like the rest of ERISA, is remedial legislation. The section should therefore be read broadly to mean that a plan participant or beneficiary if he prevails in his suit under § 1132 "should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." The mere absence of bad faith on the part of a losing defendant is not such a special circumstance. Landro v. Glendenning Motorways, Inc., 625 F.2d 1344 (8th Cir.1980). Thus, defendant's argument that plaintiff failed to show culpability or bad faith is without merit.

Ability of Parties to Satisfy An Award.
Defendant does not dispute its ability to satisfy an award, thus, the Court need not address this factor.

Relative Merits.
Defendant neither articulated nor possessed a legitimate reason for denying plaintiff vested benefits. The jury so found and awarded plaintiff substantial monetary relief. Thus, the relative merits of this case are tipped in plaintiff's favor.

Deterrence.
Contrary to defendant's position, an award of attorney's fees will promote deterrence against any future unwarranted denial of benefits. Defendants will have added incentive to comply with ERISA, rather than face suits for compliance, if they know that they may have to pay attorney's fees, in addition to the cost of compliance and their own legal fees.

Common Benefit.
Failure of an action to confer a common benefit on a group of pension plan participants is not a bar to recovery of reasonable attorney's fees and costs by plaintiff in an action to recover pension retirement benefits. The absence of such a common benefit is one factor to be considered in determining the propriety of a particular award of attorney's fees. Ford v. New York Central Teamsters Pension Fund, supra; Eaves v. Penn, 587 F.2d 453, 465 (10th Cir.1978); Korn v. Levine Bros. Iron Works Corp., 574 F.Supp. 836 (S.D.N. Y.1983); Baeten v. Van Ess, 474 F.Supp. 1324 (E.D.Wis.1979). Defendant's contention that plaintiff's action must benefit a general class of petitioners in advance of recovering attorney's fees is therefore erroneous.
Accordingly, this Court finds and concludes that plaintiff is entitled to recover reasonable attorney's fees in this matter.
The starting point in determining attorney's fees is to calculate a base or lodestar figure by multiplying a reasonable hourly rate by the number of hours reasonably expended. The Fifth Circuit Court of Appeals enumerated various factors which are relevant to an award of attorney's fees in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714 (5th Cir.1974). These factors have been adopted by the Eighth Circuit in ERISA cases, Dependahl v. Falstaff Brewing Co., 496 F.Supp. 215 (E.D. Mo.1980); Carter v. Montgomery Ward & Co., 76 F.R.D. 565 (E.D.Tenn.1977). Under the Johnson analysis, the award should generally not be less than the reasonable number of hours worked times a reasonable hourly fee. Jorstad v. I.D.S. Realty Trust, 643 F.2d 1305 (8th Cir.1981); Dependahl, *438 supra; Zoll v. Eastern Allamakee Comm. School District, 588 F.2d 246 (8th Cir.1978); Cleverly v. Western Electric Co., 594 F.2d 638 (8th Cir.1979). The hours reported for each task that are properly billable should be evaluated in order to determine whether the time spent is reasonable.
This litigation has consumed well over three years, and plaintiff's attorneys have spent an enormous amount of time on it. Given the protractive nature of this case, this Court cannot conclude that the time for which compensation is sought was not reasonably spent. Likewise, this Court need not make an artificial distribution of the attorneys' time between successful and unsuccessful claims. All of the issues involved in this case necessarily benefit the resolution of others. Dependahl, supra.
Inasmuch as defendants do not oppose the hourly fees plaintiff's counsel have requested, and in the absence of any facts suggesting that the hourly fees are exorbitant, the Court will allow as reasonable the hourly fees submitted by plaintiff's counsel.
Multiplying the hourly rates by the number of hours reasonably expended in this litigation, the Court finds the lodestar fee for plaintiff's counsel to be $121,500.50.
The Court does not feel that an enhancement is warranted in this case. The party moving for enhancement bears a heavy burden in proving entitlement to an increase for risk or quality. Jorstad, supra. An increase is designed to take account of an unusual degree of risk or skill; it is a bonus that "reflects exceptional services only." Id. quoting Lindy Bros. Builders, Inc. v. American Radiator & Standard Sanitary Corp., 540 F.2d 102 (3d Cir.1976). In addition, this circuit has frequently cautioned against over "generosity" caused by the use of high multiples of the lodestar figure. See, e.g., Paschall v. Kansas City Star Co., 695 F.2d 322 (8th Cir.1982); Jorstad, supra.
Plaintiff's counsel fail to show their entitlement to enhancement. Additionally, the lodestar figure already provides compensation for the length and complexity of the litigation because it includes more than one thousand hours in firm time that extends as far back as 1982. Moreover, the hourly rates used to calculate the fee are among the highest in the St. Louis area. These rates already reflect the experience, reputation, and quality of plaintiff's attorneys. In sum, the Court recognizes that the work done by plaintiff's attorneys was of high quality, but because this Court feels the lodestar figure amply compensates plaintiff's attorneys for the work done, the 50% enhancement is denied.
Plaintiff's attorneys have also filed a motion to recover as costs $7,872.79. In response, defendant has filed its motion attacking certain items on plaintiff's bill of costs. Defendant objects to plaintiff's bill of costs for copies on the ground that plaintiff has submitted no itemization by which it can be determined whether the costs requested for photocopying are incident to this litigation. Defendants contend that before an award be made, further itemization should be required of plaintiff. Defendant's objection on this ground is overruled, for plaintiff has demonstrated, to the satisfaction of this Court, that its costs for copies were "necessarily obtained for use in the case" within the meaning of Sec. 1920(4).
Title 28 U.S.C. § 1920 provides for the taxing of costs. 28 U.S.C. § 1924 requires that before costs are taxed, they must be verified by an affidavit that states the items are correct and were necessarily incurred in the case. To be recoverable as a part of costs, a disbursement must be shown to have been made in connection with the case in which the costs are allowed. Such a showing is normally made by an affidavit under 28 U.S.C. § 1924. The affidavit may be based on the affiant's knowledge or on business records available to him. Wahl v. Carrier Manufacturing *439 Co., Inc., 511 F.2d 209 (7th Cir.1975). In the instant matter, plaintiff's counsel have fully complied with the requirements of 28 U.S.C. § 1924, and given the lengthy nature of this case and the number of documents obviously compiled and copied for use in the case, this Court cannot conclude that plaintiff's bill of cost for copies is not reasonable.
Next, defendant objects to plaintiff's bill of cost for depositions on the ground that plaintiff is only entitled to recover the costs for depositions they noticed, not the depositions noticed and paid for by defendant. The Court disagrees and will tax the deposition costs against defendant.
This Court has discretionary power pursuant to 28 U.S.C. § 1920(2) to assess the cost of taking depositions in favor of the prevailing party. Murphy v. Amoco Production Co., 558 F.Supp. 591 (D.N.D.1983); Chemical Bank v. Kimmel, 68 F.R.D. 679 (D.Del.1975). A deposition not used at trial can still be taxed so long as it was taken for use at trial and not merely for discovery purposes. The taxability depends on whether the deposition, when taken, was reasonably necessary for use in trial. Chemical Bank v. Kimmel, supra; Koppinger v. Cullen-Schiltz & Assoc., 513 F.2d 901, 911 (8th Cir.1975). Unless the opposing party interposes a specific objection that a deposition was improperly taken or unduly prolonged, deposition costs will be taxed as having been necessarily obtained for use in the case within the meaning of 28 U.S.C. § 1920. Meder v. Everest & Jennings, Inc., 553 F.Supp. 149 (E.D.Mo.1982); Federal Savings & Loan Insurance Corp. v. Szarabajka, 330 F.Supp. 1202, 1210 (1971). In the absence of such an objection on defendant's part, the deposition costs sought by plaintiff will be allowed.
Defendant also objects to plaintiff's bill of costs for travel expenses, telephone expenses, Federal Express and local delivery costs, postage expenses, office expenses, and miscellaneous expenses on the ground that such items are not ordinarily taxable as costs. The Court agrees with defendant and will deny plaintiff's bill of costs for these items.
Taxable costs do not automatically include all expenses. Absent extraordinary or compelling circumstances, travel of attorneys is not a taxable cost of taking depositions. Kiefel v. Las Vegas Hacienda, Inc., 404 F.2d 1163 (7th Cir.1968); cert. den., 395 U.S. 908, 89 S.Ct. 1750, 23 L.Ed.2d 221; George R. Hall, Inc. v. Superior Trucking, 532 F.Supp. 985 (N.D.Ga. 1982); Frigiquip Corp. v. Parker-Hannifin Corp., 75 F.R.D. 605 (D.C.Okla.1976); 6 Moore's Fed. Practice ¶ 54.77[4]. Likewise, plaintiff's request for costs to cover long distance telephone calls, Federal Express and local delivery service, office expenses, miscellaneous and postage expenses must also be denied. The costs requested for these items are not "costs" as that term is used in 28 U.S.C. § 1920, but are in fact out-of-pocket expenses. Finding no statutory authority for reimbursement of these expenses, the Court will deny plaintiff's requests with respect to these items. Accordingly, the amount of costs plaintiff will be awarded totals $4,036.63.
Accordingly,
IT IS HEREBY ORDERED that plaintiff recover of defendant the sum of $121,500.50 as attorney's fees and $4,036.63 as costs.
NOTES
[1] 29 U.S.C. § 1003(b) lists five types of employee benefit plans that are exempted from ERISA. There is no indication from the parties that any of these exemptions apply to the CBS Plan at issue here.
[2] In any event, it is extremely doubtful that 29 U.S.C. § 1053 would apply to the relevant acts of this case. Section 1053 only applies to pension benefit plans and the CBS Plan is not a pension benefit plan. See 29 U.S.C. § 1002(2). In addition, § 1053 only prohibits the forfeiture of "accrued benefits." The legislative history of § 1053 makes it clear that Congress did not intend the nonforfeiture provisions of ERISA to apply to lump sum life insurance proceeds because they are not to be considered as "accrued benefits." See Joint Explanatory Statement of the Committee of Conference, H.R.Conf.Rep. No. 1280, 93d Cong., 2d Ses. (1974) reprinted in 1974 U.S.Code Cong. & Ad.News 4639, 5038, 5054.
[3] The Seventh Circuit has more recently reaffirmed Wardle, as it relates to jury trials in cases arising under ERISA alone. See Bugher v. Feightner, 722 F.2d 1356, 1358 (7th Cir.1983). But the Bugher decision went on to hold that if the ERISA case is also brought under the Labor Management Relations Act, 29 U.S.C. § 185(a), the parties do have a right to a jury trial. Plaintiff's complaint in the present case, however, was not brought under 29 U.S.C. § 185(a). Therefore, the Bugher decision has no application to this case.
[4] At several points during the trial, plaintiff referred to the unpublished decision in Donovan v. Schmoutey, No. CV-LV77-47, Judgment (D.Nev. Dec. 1, 1983), for the proposition that a jury trial is allowable in an ERISA case. For two reasons, the Schmoutey decision is inapposite to this case. First, the jury in Schmoutey only considered the plaintiff's state law cause of action, not the plaintiff's ERISA causes of action. Second, the state law claims which the jury considered were not preempted by ERISA because those claims related to a loan agreement between an ERISA plan fiduciary and a private corporation. In the state law claim, the plaintiff was attempting to enforce the loan agreement. Thus, the litigants' rights and obligations arose from the loan agreement, and were wholly independent of the ERISA plan. See supra at 428-430.