Lucille F. KAHNKE, individually and as Administrator of the Stanley Kahnke Estate, Myron Barrie, Gary Stiller, Kenneth Anderson, Adolph Carlson, Mary Chadderdon, Melvina Conrath, Robert Dahnert, Carol Gottschalk, Franklin Graper, Carol Hofmeister, David Hofmeister, Robert Hofmeister, Earl Hunt, Darlene Hurliman, Jerold Indermuehle, Mark Johnson, Raymond Kratz, Gloria Mittelsteadt, Clinton Musel, Viola Musel, Ardice Neidt, Bernold Nelson, Iva Perfetti, Henrietta Peters, Marlin A. Peters, Lester Root, Sheryl Root, Charles Sandness, Rose Sandness, Shirley Schauer, Wallace Schoenrock, Paul Schumacher, Maynard Sell, Herman Solyntjes, Dan Swenson, Sheldon Waite, Virginia Wobschall, Robert J. Wright, Harvey Yess, and Frank Zellmer, Plaintiffs,

v.

George L. HERTER, Berthe E. Herter, N. Marshall Seeburg & Sons, Incorporated, John E. Jacobs, Robert Stiles, John G. Olson, and American National Bank and Trust Company, Defendants.

No. 3–82 CIV 1851.

United States District Court,
D. Minnesota.

Feb. 14, 1984.

Dorsey & Whitney by James Dorsey, III, Minneapolis, Minn., for plaintiffs.

Moriarty & Janzen by Mark Labine, Minneapolis, Minn., for defendants George L. Herter and Berthe Herter.

Oppenheimer, Wolff, Foster, Shepard and Donnelly by David G. Seykora, St. Paul, Minn., appeared for defendant American Nat. Bank and Trust Co.

## MEMORANDUM ORDER

ALSOP, District Judge.

### I. Rule 12(d) Motion

This matter comes before the court upon defendants George L. and Berthe S. Herter's motion for a preliminary hearing pursuant to Fed.R.Civ.P. 12(d). Defendants Robert Stiles, John G. Olson and American National Bank & Trust Company oppose the motion, as do plaintiffs. Defendant N. Marshall Seeburg & Sons, Inc. does not seem to take a position on the motion but expresses its desire to present evidence if a preliminary hearing is held. Defendant John E. Jacobs has not responded to the motion.

■ Defendants George and Berthe Herter previously alleged that the claims against them should be dismissed because those claims were barred by the statute of limitations. Their motion to dismiss for failure to state a claim under Fed.R.Civ.P. 12(b)(6) contained matters outside the pleadings and was treated as a motion for summary judgment under Fed.R.Civ.P. 56. That motion was denied. Defendants Herters now move for a preliminary hearing on the statute of limitations issue on the grounds that such a hearing will save the cost, expenses and time of a full trial.

Those opposing the motion make two arguments. First, they argue that a Rule 12(d) preliminary hearing by its terms is only available for the seven defenses enumerated in Rule 12(b). The statute of limitations is not one of those defenses and therefore a Rule 12(d) hearing is not available. See Wright & Miller, Federal Practice and Procedure § 1373 at 708 (1969); Chilcutt v. United States, 64 F.Supp. 38, 39 (E.D.Ky.1946).

Second, those opposing the motion argue that a preliminary hearing on the statute of limitations issue is not practical. The relevant statute, 29 U.S.C. § 1113 (1976), bars all claims brought later than the earlier of the following: six years after the last act constituting a breach of fiduciary duty or three years after either the date when the plaintiffs had actual knowledge of the

breach or the date when a report from which plaintiffs could reasonably be expected to have obtained such knowledge was filed with the Secretary of Labor.

To determine whether § 1113 bars plaintiffs' claims against the Herters, the opponents argue that the court will have to determine what acts constitute a breach of fiduciary duty, what the Herters did and knew or should have known over a period of time, what the plaintiffs actually knew and when they knew it, and what the plaintiffs could reasonably be expected to have learned from any reports filed. Such issues will be duplicative of evidence presented at trial on the merits, saving no time or expense for the court or the other parties. Furthermore, issues that are interwoven with the merits are not appropriate for resolution at a preliminary hearing. *See Louisiana Power & Light Co. v. United Gas Pipe Line Co.*, 456 F.2d 326, 332 (5th Cir.), *rev'd on other grounds*, 406 U.S. 621, 92 S.Ct. 1827, 32 L.Ed.2d 369 (1972).

Defendants Herters seem to believe that a preliminary hearing is appropriate on their statute of limitations defense because they raise the defense via Rule 12(b)(6). The court does not agree. The limitation on availability of a preliminary hearing in Rule 12(d) to the seven defenses enumerated in Rule 12(b) would be completely circumvented by holding various affirmative defenses to be incorporated in Rule 12(b)(6). Furthermore, a Rule 12(b)(6) motion should not be used to resolve fact issues. In this case, an obvious fact issue arises concerning the knowledge of each plaintiff of the breach.

Defendants Herters request that the preliminary hearing be based on deposition testimony and the transcript of the April 18, 1981 meeting at which, defendants Herters allege, evidence of the breaches was revealed. Defendants Herters intend to show first, which plaintiffs were at that meeting and, second, what was said. The court does not agree that such a presentation, if allowed, would show plaintiffs' actual knowledge as required by the statute. Counsel for defendants Herters conceded in oral argument that the Herters are not relying on 29 U.S.C. § 1113(a)(2)(B), which deals with constructive knowledge raised by reports filed with the Secretary of Labor. Instead, defendants Herters are asking the court to assume that the constructive knowledge they may prove is the same as the actual knowledge they are required to prove. The court cannot make that assumption.

Finally, the court agrees that a preliminary hearing, even if available for a statute of limitations defense and even if defendants Herters could prove actual knowledge, would not be practical in this case. The issues raised and evidence presented would be duplicative of the issues and evidence at trial, resulting in no conversation of time or expense. The issues also are closely interwoven with the merits and therefore inappropriate for resolution at a preliminary hearing. The court also notes that ERISA is a relatively new act, with a dearth of authority on many of the questions that arise under it. Accordingly, defendants Herters' motion will be denied.

## II. Bifurcation of Liability and Damages

The court solicited from the parties comment on two questions: one, whether trial of liability and damages should be bifurcated and, two, whether this case is one for the court or for a jury. The only parties requesting bifurcation were the defendants George and Berthe Herter. The remaining defendants and the plaintiffs opposed bifurcation. The only parties requesting a jury trial were the plaintiffs, with the remaining parties advocating a court trial.

Those opposed to bifurcation argue that liability and damages are interwoven in these cases. They contend that any proof of liability on the part of a particular defendant will necessarily include proof of damages attributable to that defendant. A person who breaches his or her fiduciary duties shall be personally liable to make good to the plan "any losses to the plan resulting from each such breach ...." 29 U.S.C. § 1109 (1976). This section creates a "but for" test: but for the acts of the defendant, the plan would contain certain assets. Defendant American National

Bank and Trust Company, for example, claims that plaintiffs, to prevail on their allegation that the Bank should have sued the prior trustees, must establish that the Bank had a duty to sue, that it would have won if it had sued, and that it would have collected on the judgment. Thus, proof of damages is part of the proof of liability. In addition, bifurcation will not help determine the relative liability of different defendants, those opposing bifurcation argue. Finally, opponents say that the amount that each plaintiff should receive if the plaintiffs prevail is easily calculated without bifurcating by applying a known percentage to the total amount that should be in the trust. Bifurcation will not facilitate that calculation.

The only supporters of bifurcation, defendants Herters, concede they are not sure that bifurcating liability and damages would save time. The court has concluded that bifurcation will not provide any significant economy of judicial resources because the liability and damages issues in this case are closely interwoven.

### III. Availability of Jury Trial

The jury versus court trial issue is more difficult. Plaintiffs claim that since their interests are fully vested, they are not seeking a review of ministerial actions by the plan trustees. Review of ministerial actions has generally been under an arbitrary and capricious standard and such suits have been held equitable. Instead, plaintiffs claim they are seeking remedies at law under 29 U.S.C. § 1109 (personal liability for breach of fiduciary duty) for violations of fiduciary duties imposed by 29 U.S.C. §§ 1104–1106. They also contend that since they have an immediate and unconditional right to payment, the action is one at law. *See* Restatement (Second) of Trusts §§ 197–198 (1959); *Dixon v. Northwestern National Bank*, 297 F.Supp. 485, 488–89 (D.Minn.1969).

Defendants contend that plaintiffs are not entitled to a jury trial because the action is equitable in nature. Defendants say that plaintiffs do not seek a determination of the amount of benefits due each plaintiff. Instead, they seek determina-

tions that each of the defendants breached fiduciary duties, that the breaches caused damages to the plan, and that defendants are liable to make good to the plan the amount of the losses. There is no right to immediate and unconditional payment of money from the trustee to the beneficiaries. Defendants point to several cases interpreting the civil enforcement sections of the Employee Retirement Income Security Act (ERISA). *In re Vorpahl*, 695 F.2d 318 (8th Cir.1982); *Calamia v. Spivey*, 632 F.2d 1235 (5th Cir.1980); and *Wardle v. Central States, Southeast and Southwest Areas Pension Fund*, 627 F.2d 820 (7th Cir.1980), *cert. denied*, 449 U.S. 1112, 101 S.Ct. 922, 66 L.Ed.2d 841 (1981). Those cases all held that actions under ERISA § 502, 29 U.S.C. § 1132(a)(1)(B) were equitable actions to be tried to the court, not legal actions invoking a right to jury trial.

Section 502 of ERISA, 29 U.S.C. § 1132, contains six civil enforcement provisions. Of those provisions, subsection (a)(1)(B) has generated the most litigation concerning the right to jury trial. Note, *The Right to Jury Trial in Enforcement Actions Under Section 502(a)(1)(B) of ERISA*, 96 Harv.L.Rev. 737, 738 and n. 11 (1983). Subsection (a)(1)(B) gives a beneficiary the right to sue to recover benefits due the beneficiary under the terms of the plan, to enforce his or her rights under the plan, or to clarify rights to future benefits under the plan. Such actions are termed "plan-enforcement" actions. While some controversy remains, the weight of authority appears to be and clear authority in this circuit is that such actions are equitable. *In re Vorpahl*, 695 F.2d at 320–322.

Subsection (a)(3) gives the participant, beneficiary or fiduciary the right to sue (A) to enjoin any act or practice that violates ERISA or the terms of the plan or (B) to obtain other appropriate equitable relief to redress such violations or enforce ERISA or the plan terms. While the right to a jury trial under 502(a)(3) does not appear to have been widely litigated, if at all, present case law provides some authority for the conclusion that actions under subsection (a)(3) are also equitable. The courts that

have found subsection (a)(1)(B) actions to be legal ones have done so, in part, by reasoning that the explicit labeling of (a)(3) actions as equitable by Congress means that (a)(1)(B) actions must be legal to avoid rendering one of the provisions superfluous. *See, e.g., Stamps v. Michigan Teamsters Joint Council No. 43*, 431 F.Supp. 745 (E.D.Mich.1977). The courts that have found subsection (a)(1)(B) actions to be equitable have done so, in part, by explaining the co-existence of (a)(1) and (a)(3). *See, e.g., Wardle*, 627 F.2d at 829; 96 Harv.L. Rev. at 740. Thus, the equitable nature of subsection (a)(3) actions has been discussed in the context of the subsection (a)(1)(B) controversy.

Unfortunately, there appears to be a dearth of authority regarding the equitable or legal nature of subsection (a)(2) actions like the case at bar. Subsection (a)(2) allows the Secretary, a participant, beneficiary or fiduciary to bring an action for "appropriate relief under section 409 [29 U.S.C. § 1109]." Section 409 of ERISA, 29 U.S.C. § 1109, provides for personal liability of the fiduciary for losses resulting from his or her breach of fiduciary duty, requires the fiduciary to restore to the plan profits made through use of plan assets and subjects the fiduciary to "such other equitable or remedial relief as the court may deem appropriate."

The right to a jury trial in statutory actions is derived from two sources: congressional intent, which may be explicit or implicit, and the seventh amendment guarantee of a jury trial if the statute creates rights and remedies that would constitute a suit "at common law." Comment, *The Right to a Civil Jury Trial in ERISA Section 502(a)(1)(B) Actions: Wardle v. Central States, Southeast & Southwest Areas Pension Fund*, 65 Minn.L.Rev. 1208, 1208–1209 (1981). Congress did not expressly indicate whether it intended to create a right to jury trial under § 502 of ERISA and attempts at discerning an implied congressional intent to create equitable or legal relief have obviously produced two schools of thought, at least regarding subsection (a)(1)(B). *Compare Stamps*, 431 F.Supp. 745 *with Wardle*, 627 F.2d 820.

At least one commentator has argued that, absent any affirmative evidence of an intent to create the jury trial right in ERISA actions, no such right should be judicially provided. 65 Minn.L.Rev. at 1213.

An analysis of congressional intent has thus far provided courts with little guidance. The second source of a jury trial right, the seventh amendment, has also proven difficult to apply. The static historical test, where only claims that were historically legal would be guaranteed a jury trial, has been modified by Supreme Court decisions urging that the seventh amendment inquiry focus upon the "nature of the issues to be tried rather than the character of the overall action." *Id.* at 1214 (quoting *Ross v. Bernhard*, 396 U.S. 531, 90 S.Ct. 733, 24 L.Ed.2d 729 (1970)). The *Ross* court suggested that determination of whether the issues are legal or equitable depends on: one, the pre-merger custom; two, the remedy sought; and three, the practical limitations and abilities of juries. *Id.* at 538 n. 10, 90 S.Ct. at 738 n. 10.

Some courts and commentators in applying the first *Ross* factor, the historical custom test, have argued that ERISA actions, as pension beneficiary claims against the trustees of the pension fund, are closely analogous to the historically equitable beneficiary-trustee form of action. *See In re Vorpahl*, 695 F.2d at 322; *Wardle*, 627 F.2d at 829; 65 Minn.L.Rev. at 1215–16. The court agrees that under the historical test ERISA actions, including those authorized by 29 U.S.C. § 1132(a)(2), are equitable actions.

Application of the second *Ross* factor, the remedy sought, depends on more than a mere characterization of money damages as legal and other forms of relief as equitable. The fact that plaintiffs pray for monetary relief does not require the conclusion that the action is legal rather than equitable. *See Curtis v. Loether*, 415 U.S. 189, 196, 94 S.Ct. 1005, 1009, 39 L.Ed.2d 260 (1974). The *Vorpahl* court concluded that because the monetary relief sought in that case turned upon a determination of plaintiffs' entitlement to benefits, such relief was an integral part of an equitable action. *In re Vorpahl*, 695 F.2d at 322. The expla-

nation this court finds most persuasive is the following:

> [A] claim for pension benefits, even if drafted as a claim for money damages, actually seeks both an order (in the nature of restitution of funds paid into the Fund) and, in effect, an affirmative injunction compelling future payment of benefits .... Because both of these underlying remedies are clearly equitable, ERISA actions, characterized in terms of "the remedy sought," must also be equitable.

65 Minn.L.Rev. at 1217.

In the case at hand, plaintiffs allege that the plan contains only about $25,000 instead of the almost $297,000 it would contain but for the defendants' acts. Plaintiffs pray for judgment: one, adjudging the defendants liable for the almost $297,000 plus interest and investment income on that principal amount; two, ordering such · amount to be paid to the plan for distribution to the participants; three, awarding them one million dollars in punitive damages against defendants; four, awarding them reasonable attorneys' fees and costs; and five, such other relief as the court deems just and equitable. The remedy seeking payment of funds into the plan for distribution to participants in the shares set by the plan is clearly an equitable remedy. Thus, under the second test, this action for breach of fiduciary duty is also termed equitable.

Since the first two *Ross* factors point to the same conclusion, the court does not find it necessary to assess exhaustively the third factor, the practical limitations and abilities of juries. *See* 65 Minn.Law Rev. at 1214 and n. 40, 1217 n. 57. It is sufficient to note that ERISA is conceded by many to be a complex law and practice under it is a developing legal specialty.

█ Based upon its analysis of historical custom and the remedy sought, the court concludes that there is no seventh amendment right to a jury trial in ERISA actions brought under § 502(a)(2). While congressional intent to create a statutory right to jury trial is somewhat more obscure, the court is persuaded that the Eighth Circuit's

analysis of § 502(a)(1)(B) actions is analogous to the question before this court and that the appellate court would treat actions under § 502(a)(2) as equitable. The court also agrees that it should not judicially provide a statutory jury trial right absent affirmative evidence of congressional intent to create that right. Thus, both sources of the right to jury trial, the seventh amendment and congressional intent, lead to the conclusion that there is no jury trial right in ERISA actions under § 502(a)(2).

## IV. Conclusion

Accordingly, defendants Herters' motion for a Rule 12(d) preliminary hearing will be denied, trial of liability and damages will not be bifurcated, and the trial of this action for breach of fiduciary duties will be to the court and not to a jury.

Upon the foregoing,

IT IS ORDERED That defendants George and Berthe Herter's motion for a Rule 12(d) preliminary hearing on the statute of limitations issue be and the same hereby is in all things denied.

IT IS FURTHER ORDERED that plaintiffs' demand for jury trial be and the same hereby is stricken from the complaint.