# United States Court of Appeals

## For the Eighth Circuit

_____

No. 13-3153
_____

CeCelia Catherine Ibson

*Plaintiff - Appellant*

v.

United Healthcare Services, Inc.

*Defendant - Appellee*
_____

Appeal from United States District Court
for the Southern District of Iowa - Des Moines
_____

Submitted: May 15, 2014
Filed: December 18, 2014
_____

Before RILEY, Chief Judge, BEAM and SHEPHERD, Circuit Judges.
_____

SHEPHERD, Circuit Judge.

CeCelia Catherine Ibson and her family were insured by United Healthcare Services, Inc. (UHS) through a policy available to her to as a member of her law firm. Due to an error, UHS began informing Ibson's medical providers that Ibson and her family no longer had insurance coverage. Although UHS eventually paid the claims it should have paid all along, Ibson initiated this action against UHS raising state law

claims of breach of contract, negligence, and bad faith, and seeking punitive damages. UHS responded that Ibson's claims were preempted by the Employee Retirement Income Security Act (ERISA) and barred by the policy's three-year contractual limitations period. The district court agreed with UHS and entered summary judgment against Ibson. Ibson appeals, asserting the same arguments presented below. We agree with the district court that Ibson's state law claims are preempted under ERISA, however we disagree with the district court's entry of summary judgment on the basis of the three-year contractual limitations period. Thus, we reverse the entry of summary judgment and remand the matter to the district court for further proceedings.

I.

Ibson began working as an associate in an Iowa law firm in 2002. She declined her law firm's health care coverage because she was covered under her husband's employer-provided group health coverage. In 2003, Ibson became a shareholder in the firm. On March 6, 2004, Ibson applied to UHS for health insurance coverage for herself and her family under the law firm's group health coverage. Each shareholder of the law firm was responsible for his or her own premium payments, however the firm paid 90% of its covered employees' premiums for single coverage. The law firm remitted payment to the insurance company and distributed information from UHS to the members and employees of the law firm, but performed no other administration relating to the insurance.

From 2006 through 2008, Ibson and her family received extensive medical care for numerous aliments including cancer and a seizure disorder. In January 2008, the doctor treating Ibson's children notified her that UHS was rejecting the claims the doctor submitted on Ibson's behalf, saying to the providers that Ibson had "no coverage." In the following months, Ibson's own doctor and other medical providers began contacting Ibson to say that UHS had demanded recoupment for care received

in 2007, claiming the "services were provided after coverage." The record is unclear as to why UHS began denying coverage, but explanations provided by UHS included Ibson had used an incorrect social security number on her application and a UHS employee randomly assigned Ibson a new identification number for processing claims that caused claims filed under the old identification number to be denied.

On April 4, 2008, UHS sent Ibson an e-mail stating: (1) it would change the incorrect social security number UHS had on file for Ibson back to her correct social security number, (2) it would notify the department in charge of recouping monies of the correction and direct them to stop recoupment proceedings, (3) it would run a report for all prior claims that had been subjected to recoupment and reprocess those claims, and (4) it would contact all of Ibson's medical providers to explain UHS's error and to promise that Ibson's claims would be correctly processed. UHS failed to follow through on all of these promises. Even as late as January 2010, Ibson continued to receive notice that her claims were not being processed and UHS continued recoupment actions. The district court noted that UHS's behavior, "if true, is shocking."

Ibson's law firm cancelled the policy effective June 1, 2008, and Ibson contracted for coverage from another health insurance carrier at that time. Ibson acknowledged, "UH[S] ultimately covered the claims, but not until March 9, 2010." (Pl.'s Statement of Facts, Doc. 19 Attach., ¶ 35 (emphasis in original).)

On September 27, 2012, Ibson brought suit against UHS, alleging state law claims of breach of contract, negligence, and bad faith, and seeking punitive damages. UHS moved to strike Ibson's jury demand, arguing that her state law claims were preempted under the complete preemption clause of ERISA and, as such, a jury trial was unavailable. While that motion was pending, UHS also moved for summary judgment, arguing Ibson's claims were barred by a three-year limitations period in the contract. The district court granted the motion to strike. Ibson sought interlocutory

appeal of the district court's order granting the motion to strike. However, before the district court considered Ibson's motion to file an interlocutory appeal, the district court granted summary judgment to UHS. In granting summary judgment, the district court held the claims were time-barred under the policy's three-year contractual limitations period for bringing suit. Ibson now appeals.

II.

We first consider whether the district court erred in striking Ibson's jury demand when it concluded that Ibson's state law claims were preempted under ERISA. We review this question of law de novo. See Estes v. Fed. Express Corp., 417 F.3d 870, 872 (8th Cir. 2005). To resolve this question, we address three issues: (1) was the plan at issue an "employee benefit plan," (2) if so, does the plan fall under ERISA's safe harbor exemption, and (3) if not, are Ibson's claims preempted by ERISA?

For coverage under ERISA, a plan must be an "employee benefit plan," defined as either an "employee pension benefit plan" or an "employee welfare benefit plan." See 29 U.S.C. § 1002. An "employee welfare benefit plan" is defined as any plan, fund, or program, established or maintained by an employer or an employee organization for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise. See 29 U.S.C. § 1002(1). "A plan is established for ERISA purposes when a reasonable person can ascertain (1) the intended benefits, (2) the class of beneficiaries, (3) a source of funding, and (4) the procedures for receiving benefits." Petersen v. E.F. Johnson Co., 366 F.3d 676, 678 (8th Cir. 2004). Here, these factors are present. The benefits were explained in the policy, the class of beneficiaries were the partners and employees of the law firm and their family members, the source of financing was the law firm, and the procedures for receiving benefits were spelled out in the plan and the plan brochure. See Robinson v. Linomaz, 58 F.3d 365, 368 (8th Cir. 1995) ("[A]n employer's purchase

-4-

of an insurance policy to provide health care benefits for its employees can constitute an [Employee Welfare Benefit Plan for ERISA purposes."). Further, Ibson's argument that she, as a shareholder of her law firm, was not an "employee" under ERISA is without merit as we have previously held that shareholders can qualify as beneficiaries under an ERISA plan. See Prudential Ins. Co. of Am. v. Doe, 76 F.3d 206, 208 (8th Cir. 1996) (holding shareholders of corporation were "beneficiaries" of ERISA plan because they were designated to receive benefits by the terms of the employee benefit plan); Robinson, 58 F.3d at 369-70 (rejecting sole shareholders argument about employee status because shareholders were beneficiaries under ERISA plan). The plan at issue was an "employee benefit plan."

Next we consider whether the plan falls under the ERISA safe harbor provision. Certain group or group-type insurance programs offered by an insurer to employees are explicitly exempted from ERISA governance under the safe harbor provision. 29 C.F.R. § 2510.3-1(j). To satisfy the safe harbor exemption, four elements must be present: "(1) [n]o contributions are made by an employer or employee organization; (2) [p]articipation in the program is completely voluntary for employees or members; (3) [t]he sole functions of the employer . . . with respect to the program are, without endorsing the program, to permit the insurer to publicize the program to employees or members, to collect premiums through payroll deductions or dues checkoffs and to remit them to the insurer; and (4) [t]he employer . . . receives no consideration in the form of cash or otherwise in connection with the program, other than reasonable compensation, excluding any profit, for administrative services." Id. For the plan to qualify for this exemption from ERISA, all four of the safe harbor criteria must be met. See Dam v. Life Ins. Co. of N. Am., 206 F. App'x 626, 627 (8th Cir. 2006) (unpublished per curiam). Under the first element—that no contributions be made by the employer—this plan fails to qualify for the safe harbor exemption. It is uncontested that the law firm paid part of the premium costs for the employees of the firm. Thus the plan does not meet all of the elements for exemption under the ERISA safe harbor provision.

Having determined that the plan in question is covered under ERISA and not subject to ERISA's safe harbor exemption, the last question the court must answer is whether Ibson's state law claims for breach of contract, negligence, and bad faith are preempted claims under ERISA. UHS moved to strike Ibson's jury demand arguing that Ibson's claims are preempted under 29 U.S.C. § 1132, ERISA's complete preemption doctrine.[1] The district court granted the motion to strike, agreeing that the claims are preempted.

"[T]he ERISA civil enforcement mechanism is one of those provisions with such 'extraordinary pre-emptive power' that it 'converts an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.'" Aetna Health Inc. v. Davila, 542 U.S. 200, 209 (2004) (quoting Metro. Life Ins. Co. v. Taylor, 481 U.S. 58, 65-66 (1987)). "[A]ny state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore pre-empted." Id.

Ibson argues that her state-law claims concern UHS's improper cancellation of her insurance policy and are not related to ERISA or the terms of the policy. This argument ignores the essence of her claim—that UHS should have paid medical benefits under the ERISA-regulated plan and failed to do so—a claim that could be brought under ERISA. See Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 54 (1987) ("The policy choices reflected in the inclusion of certain remedies and the exclusion of others under the federal scheme would be completely undermined if ERISA-plan

---

[1]We decline to consider whether Ibson's claims are expressly preempted under 29 U.S.C. § 1144 as that was not the argument UHS presented to the district court when it moved to strike Ibson's jury demand. See Prudential Ins. Co. of Am. v. Nat'l Park Med. Ctr., Inc., 413 F.3d 897, 907 (8th Cir. 2005) (discussing the difference between "complete preemption" under 29 U.S.C. § 1132 and "express preemption" under 29 U.S.C. § 1144).

participants and beneficiaries were free to obtain remedies under state law that Congress rejected in ERISA."). Accordingly, Ibson's claims are premised on the existence of her ERISA-regulated plan. Whatever the reason UHS gave medical providers for denying claims, it has never claimed to Ibson that it terminated her contract. As between Ibson and UHS, the focus of the dispute is the improper processing of claim benefits and the failure of UHS to pay eligible claims. Because Ibson's proposed state law claims could have been brought under ERISA's civil enforcement mechanism, her claims are completely preempted by section 1132. See 29 U.S.C. § 1132(a)(1)(B) ("A civil action may be brought . . . by a participant or beneficiary . . . to recover benefits due to him under the terms of his plan . . . .").

## III.

Having determined that Ibson's claims are completely preempted by ERISA, we now consider whether the district court erred in granting summary judgment on the basis that the complaint was filed outside of the contractual limitations period. We review a grant of summary judgment de novo, construing the facts in the light most favorable to Ibson. Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." See Fed. R. Civ. P. 56(a).

Under Section 9 of the Policy, which is entitled "General Legal Provisions," the policy gives two limitations periods for bringing legal actions against UHS. The first limitations period states:

> You cannot bring any legal action against us to recover reimbursement until 60 days after you have properly submitted a request for reimbursement as described in (Section 5: How to File a Claim). If you want to bring a legal action against us you must do so within three years from the expiration of the time period in which a request for

reimbursement must be submitted or you lose any rights to bring such an action against us.

The second limitations serves as a catch-all provision and provides:

You cannot bring any legal action against us for any other reason unless you first complete all the steps in the complaint process described in (Section 6: Questions, Complaints, Appeals). After completing that process, if you want to bring a legal action against us you must do so within three years of the date we notified you of our final decision on your complaint or you lose any rights to bring such an action against us.

"Because ERISA has no statute of limitations for actions to recover plan benefits, we borrow the most analogous state statute of limitations." Duchek v. Blue Cross & Blue Shield of Neb., 153 F.3d 648, 649 (8th Cir. 1998). In this case, this normally would be Iowa's 10-year statute of limitations for bringing contract claims. See Iowa Code § 614.1(5). Iowa law, however, permits parties to contractually agree to a shorter limitations period for bringing actions. See Davidson v. Wal-Mart Assocs. Health & Welfare Plan, 305 F.Supp.2d 1059, 1070 (S.D. Iowa 2004).

Ibson and UHS were permitted to impose contractual limitations periods, like those found in the insurance contract here, for the bringing of claims. On appeal, Ibson argues that neither limitations provision stated in the policy applies to her claims. As to the first paragraph, Ibson argues that it is only applicable where the insured is seeking services from a non-network provider. The second paragraph, Ibson argues, pertains to claims that UHS refuses to pay because the claim is excluded by the policy. In its brief, UHS responded that Ibson had until May 20, 2009, one year after the last date of service, to submit a claim for reimbursement and until May 20, 2012, to file suit. However, at oral argument, UHS dropped the majority of its limitations argument, conceding that the first limitations-period paragraph was not applicable to Ibson's complaint as that limitations period applied only to claims made for out-of-network providers. Instead, UHS now argues that its

April 4, 2008 email constituted a "final decision" under the second paragraph, and therefore Ibson had until April 4, 2011, to file her complaint.

UHS did not argue the applicability of the second paragraph to the district court. UHS stated to this court that the district court based its summary judgment determination on both limitations paragraphs. This description is inaccurate. The district court only cited language from the first paragraph and clearly analyzed whether the complaint was timely based on the date from the last date of service. UHS has now acknowledged that reliance on the first paragraph to bar Ibson's claims was improper. UHS now asks this court to find that its April 4, 2008 email to Ibson constituted a final decision for purposes of the second limitations paragraph. The record has not been fully developed as to this issue, and thus we decline UHS's invitation. Further, we note that the district court found that "Ibson attempted to resolve coverage issues with UHS up until 2010," suggesting that the district court would not have found UHS's April 4, 2008 email to be a final decision. In any event, construing the facts available to our court in the light most favorable to Ibson, we cannot say that, as a matter of law, UHS is entitled to summary judgment based on the plain language of the policy limitations period in the insurance contract.

V.

Accordingly, we affirm the district court's order striking Ibson's demand for a jury trial on the basis that her claims are preempted by ERISA. We reverse the district court's grant of summary judgment to UHS on the basis of the contractual limitations period and remand this matter to the district court for further consideration.

_____