**KEOKUK AREA HOSPITAL, INC., Plaintiff,**

v.

**TWO RIVERS INSURANCE COMPANY, d/b/a Employee Benefit Systems, Inc., Defendant.**

**Case No. 3:16–CV–00066–SMR–SBJ**

United States District Court, S.D. Iowa, Davenport Division.

Signed 01/07/2017

Bruce C. McDonald, McDonald Law Office, Keokuk, IA, Anthony L. Vitullo, Jon D. Azano, Fee, Smtih, Sharp & Vitullo LLP, Dallas, TX, for Plaintiff.

Matthew P. Pappas, Pappas O'Connor, PC, Rock Island, IL, Brian J. Riordan, Joshua M. Wolkomir, Clausen Miller PC, Chicago, IL, for Defendant.

## ORDER ON MOTION TO DISMISS

### STEPHANIE M. ROSE, JUDGE
### UNITED STATES DISTRICT COURT

This is a dispute between a hospital and an insurance company. Plaintiff Keokuk Area Hospital, Inc. ("Hospital"), hired Defendant Two Rivers Insurance Company ("Insurance Company") to administer a health benefits plan for the Hospital's employees. The Hospital now alleges that the Insurance Company failed to properly administer the plan because it was negligent and breached its fiduciary duties. The Insurance Company responded with a Motion to Dismiss. For the reasons set forth below, the Motion to Dismiss, [ECF No. 19], is GRANTED in part and the Hospital is GRANTED leave to amend the Second Amended Complaint accordingly.

### I. BACKGROUND[1]

Plaintiff Keokuk Area Hospital, Inc., is a non-profit Iowa hospital that employs approximately 350 doctors, nurses, and medical staff. Second Amended Complaint ("SAC") ¶ 7. From 2002 to 2010, the Hospital provided its employees with health care benefits through the Organized Delivery System ("ODS") established by the Iowa Department of Public Health. *Id.* ¶ 8. Defendant Two Rivers Insurance Company d/b/a Employee Benefit Systems, Inc., was the Hospital's health care plan administrator and the ODS plan held a surplus of approximately $1.2 million toward the end of 2010. *Id.*

---

1. The facts come from the Second Amended Complaint, [ECF No. 16], and are assumed true for the purposes of the Motion to Dismiss. *See Brown v. Medtronic, Inc.,* 628 F.3d 451, 459 (8th Cir. 2010) (indicating that courts must accept as true the plaintiff's factual allegations, but they need not accept as true the plaintiff's legal conclusions).

In 2010, the Insurance Company, still the Hospital's plan administrator, advised the Hospital to change to a benefit plan offered through the Insurance Company. *Id.* ¶ 9. The Hospital agreed and hired the Insurance Company as a sponsor and administrator of its Keokuk Health Systems Health, Dental, Life and Disability Plan ("the Plan"). *Id.* The Hospital paid the Insurance Company $50,000 per month for its services. *Id.*

Several acts of the Insurance Company, as an administrator of the Plan, are central to this case. First, the Insurance Company failed to make an actuarially-determined analysis of an appropriate reserve fund needed to start the Plan. *Id.* ¶ 10. Instead, the Plan contained a self-funded arrangement with no funding available to pay future estimated claims for benefits. *Id.* Second, the Insurance Company did not negotiate appropriate provider contracts, including failing to secure individualized discounts from local medical providers. *Id.* ¶ 11. Instead, the Insurance Company relied on a national discount provider that did not separately seek rate reductions for the medical providers that the Hospital's employees typically use. *Id.* This forced the Hospital to pay substantially more for its employees' medical benefits than was customary in the industry, i.e., in excess of 90% of the costs to some outside providers when industry custom was 50% to 60% on average. *Id.* Third, the Insurance Company created a system that comingled participant contributions with the Hospital's accounts and did not contain the necessary financial and accounting controls. *Id.* ¶ 12. Fourth, the Insurance Company did not provide legally required disclosures to plan participants and failed

to file appropriate documents with the Internal Revenue Service. *Id.* ¶ 14.

These actions resulted in an investigation by the United States Department of Labor and significant financial damage. *Id.* ¶¶ 13, 14. The Plan was already running a $420,540 deficit by the end of 2010 and a $1,336,019 deficit by the end of 2012. *Id.* ¶ 13. By the end of 2011, the Plan was "upside down" in the amount of $1,401,597 and the unpaid health claims reached $1.8 million by February 2013. *Id.* During this downward spiral, the Insurance Company accessed the Hospital's bank accounts to ensure that it was compensated for its own work. *Id.*

The Hospital then took two actions. First, the Hospital hired "an independent health care turnaround firm" to address the financial damage and to perform an independent investigation. *Id.* ¶ 15. The investigation determined that the Plan was unsustainable and created financial harm to the Hospital and its finances. *Id.* Second, the Hospital hired an independent auditor to determine the scope of the financial damage. *Id.* The audit revealed that the Plan was unsuccessful, the Insurance Company lacked the general and business knowledge necessary to sponsor a self-funded group health plan, and the Insurance Company failed to produce stop loss reinsurance policies despite requests to do so. *Id.* ¶¶ 15, 16.

The Hospital now brings suit against the Insurance Company alleging common law negligence and breach of fiduciary duty under the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1104. *Id.* ¶¶ 17–25. The Hospital lists eleven failures by the Insurance Company that allegedly amount to negligence.[2] *Id.* ¶ 18. It also

---

**2.** This includes the failure to appropriately (1) evaluate the economies of the Plan; (2) evaluate the scope and function of the Plan; (3) draft the necessary documents required to properly form the Plan; (4) establish financial

procedures that avoid commingling of funds; (5) analyze the scope of benefits that should be provided to the Hospital's employees; (6) negotiate provider contracts; (7) analyze the

lists seven alleged breaches of the Insurance Company's fiduciary duties to the Plan and its participants.[3] *Id.* ¶¶ 22, 23. The Hospital seeks to recover compensatory damages, punitive damages, attorney's fees, and costs of suit. *Id.* ¶¶ 25, 26.

The Insurance Company filed a Motion to Dismiss the Hospital's Second Amended Complaint. [ECF No. 19]. It argues that the Hospital fails to state a claim on which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). *Id.* at 1.

## II. STANDARD OF REVIEW

Rule 12(b)(6) permits a motion to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To meet this standard, and thus survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Braden v. Wal–Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937. Although the plausibility standard "is not akin to a 'probability requirement,'" it demands "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "The facts alleged in the complaint 'must be enough to raise a right to relief above the speculative level.'" *Clemons v. Crawford*, 585 F.3d 1119, 1124 (8th Cir. 2009) (quoting *Drobnak v. Andersen Corp.*, 561 F.3d 778, 783 (8th Cir. 2009)). All reasonable inferences must be drawn in the plaintiff's favor. *Crooks v. Lynch*, 557 F.3d 846, 848 (8th Cir. 2009).

## III. ANALYSIS

The Insurance Company makes three arguments in its Motion to Dismiss. First, it argues that ERISA preempts the negligence claim and, even if it does not, the economic loss rule bars it. [ECF No. 19 at 2]. Second, it argues that the breach of fiduciary duty claim fails because the Hospital, suing in its individual capacity, does not have standing. *Id.* Finally, it argues that the Hospital's request for compensatory damages, punitive damages, and jury trial should be stricken because such requests are not available under ERISA. *Id.*

### A. Negligence Claim

As explained below, ERISA preempts the Hospital's negligence claim. The Court therefore does not address the Insurance Company's secondary argument against the negligence claim based on the economic loss rule.

---

array of potential providers for the Plan; (8) determine appropriate reserves for the fund; (9) ensure the Plan's procedures would provide legally required disclosures to plan participants; (10) ensure the Plan contained proper financial and accounting controls; and (11) ensure the Plan did not commingle Plan funds with the Hospital's assets. *Id.* ¶ 18.

**3.** This includes the failure to (1) properly negotiate discounts with local medical providers; (2) manage the plan in a fiscally responsible manner; (3) enact procedures to prevent commingling of the Plan's funds and the Hospital's assets; (4) ensure proper reserves or funding; (5) retain an actuary for proper funding; (6) provide the legally required disclosures to governmental authorities; and (7) administer the Plan with the best interests of the Plan participants by failing to incorporate reasonable safeguards to prevent the Plan from going "upside down." *Id.* ¶¶ 22(a)–(f), 23.

### 1. ERISA Preemption

■ ERISA preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan" subject to ERISA. 29 U.S.C. § 1144(a). Thus, the "key to determining whether a state law is preempted is whether the state law in question 'relates to' an ERISA plan." *Kuhl v. Lincoln Nat'l Health Plan of Kansas City, Inc.*, 999 F.2d 298, 302 (8th Cir. 1993). This phrase is "construed extremely broadly." *Id.* at 301. "A law [clearly] 'relates to' an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan." *Id.* at 302 (quoting *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96–97, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983)). And the law can be preempted "even though the state law was not designed to affect benefit plans and its effect on such plans is only incidental." *Id.* "Along these lines, [the Eighth Circuit Court of Appeals] ha[s] held that claims of misconduct against the administrator of an employer's health plan fall comfortably within ERISA's broad preemption provision." *Shea v. Esensten*, 107 F.3d 625, 627 (8th Cir. 1997); *see also Ibson v. United Healthcare Servs., Inc.*, 776 F.3d 941, 945 (8th Cir. 2014) (noting that a claim that merely could have been brought under ERISA was preempted by ERISA).

For example, in *Kuhl*, plaintiffs brought, among other claims, a medical malpractice negligence claim against an administrator of an ERISA health insurance plan. 999 F.2d at 300. The district court held that ERISA preempted the negligence claim because it dealt with the administration of the plan. *Id.* at 301. The Eighth Circuit affirmed. *Id.* at 302. It also reasoned that the claim arose from the administration of benefits, which ERISA governs, and that "characterizing the same administrative decisions as 'malpractice' does not change the fact that plaintiffs' claims are based on the contention that [the administrator] improperly processed Kuhl's claim for medical benefits." *Id.* at 302, 303. As a result of this preemption, plaintiffs filed a second suit to allege a claim for breach of duty under ERISA, similar to the Hospital's second claim in this case. *Id.* at 301.

■ Here, like in *Kuhl*, ERISA preempts the Hospital's negligence claim and the Hospital is left with its ERISA breach of fiduciary duty claim. Although the Hospital is not suing to recover improperly withheld benefits, its suit nonetheless concerns an alleged failure to properly administer the Plan. Specifically, the Hospital alleges that the Insurance Company did not properly administer the Plan because, among other things, it failed to properly determine an appropriate reserve fund for the Plan, failed to negotiate rates with healthcare providers most often sought by the Hospital's employees, impermissibly comingled assets, and did not provide the required disclosures. SAC ¶¶ 10–14, 18. And the Hospital even expressly relies on ERISA for relief. SAC ¶¶ 24 (relying on ERISA's fiduciary duty provision, 29 U.S.C. § 1104), 25 (relying on ERISA's enforcement provision, 29 U.S.C. § 1132). Indeed, ERISA's fiduciary duty obligations squarely address the Insurance Company's alleged negligence because the alleged acts of negligence mirror the alleged breaches of duty in the Second Amended Complaint. *See* SAC ¶¶ 18 (negligence allegations), 22–23 (ERISA breach of duty allegations); 29 U.S.C. § 1104(a)(1)(B) (requiring a fiduciary to discharge duties with respect to a plan with the care of a "prudent man acting in a like capacity and familiar with such matters"). The Hospital's negligence claim, then, is one "of misconduct against the administrator of an employer's health plan [that] fall[s] comfortably within ERISA's

broad preemption provision." *Shea*, 107 F.3d at 627.

■ Further, the Hospital's two arguments are not persuasive. First, the Hospital argues that "[i]f this Court ultimately determines that [the Insurance Company] is simply a non–fiduciary Plan advisor or consultant, then [the Hospital's] negligence claim is not preempted and cannot be dismissed on the basis of ERISA preemption." [ECF No. 20 at 5]. However, in its Second Amended Complaint, the Hospital did not identify the Insurance Company as merely an advisor or consultant; it identified the Insurance Company as a fiduciary and administrator of the Plan. SAC ¶ 21 ("[The Insurance Company] was a fiduciary . . . [and] the named plan administrator and exercised discretion and control over the management of the Plan . . . ."). And, as explained, a suit against a plan administrator regarding the administration of an ERISA plan falls within ERISA's preemption provision. *Shea*, 107 F.3d at 627; *Consol. Beef Indus., Inc. v. New York Life Ins. Co.*, 949 F.2d 960, 963 (8th Cir. 1991) ("Given ERISA's broad pre-emption provision, state law claims for improper plan administration are pre-empted."). The very cases the Hospital cites—all non-controlling cases from other jurisdictions—acknowledge this in their reasoning. *See, e.g., Airparts Co., Inc. v. Custom Benefit Servs. of Austin, Inc.*, 28 F.3d 1062, 1066 (10th Cir. 1994) (finding no preemption because the suit involved an "allegedly negligent third-party service providers," as opposed to a conflict between principals, like the employer and plan fiduciary).

Second, the Hospital argues that negligence *"prior* to the Plan's formation" is not preempted because at that time the Insurance Company was not the Plan's administrator but instead merely designed and implemented the Plan. [ECF No. 20 at 8 (emphasis in original) ]. Whether this argument has merit is irrelevant. The negligence allegations in the Second Amended Complaint do not concern pre-Plan misconduct unrelated to running the Plan, such as misrepresenting the Plan's terms to induce the Hospital into obtaining a plan through the Insurance Company in the first place, which was the issue of all the cases the Hospital cites for its second argument. *See Hobson v. Robinson*, 75 Fed.Appx. 949, 952 (5th Cir. 2003) (finding no preemption of "the claims for fraud and misrepresentation because the underlying conduct occurred in the inducement of an ERISA policy, not in its administration"); *Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.*, 170 F.3d 985, 991 (10th Cir. 1999) ("We find instructive those cases in which an employer sued an insurance professional for misrepresentations that induced plan participation."); *Wilson v. Zoellner*, 114 F.3d 713, 715, 721 (8th Cir. 1997) (finding no preemption of pre-plan misrepresentations by an insurance company agent to induce plaintiff to obtain the insurance policy); *Patel v. Sea Nine Assocs., Inc.*, Civil No. 3:15-cv-00754-M, 2015 WL 4617020, at *4 (N.D. Tex. Aug. 3, 2015) ("Plaintiffs' claims are based on various misrepresentations and omissions that Defendants allegedly made to induce Plaintiffs into investing in the Plan."); *Genesis Specialty Tile & Accessories, LLC v. Amerus Life Ins. Co. of Iowa*, Civil No. CIV. S-11-2489 LKK/DAD, 2012 WL 1197613, *3 (E.D. Cal. Apr. 10, 2012) ("[A]ll the causes of action seek relief based upon the fraud that occurred before the plan was created, and that induced plaintiffs to contribute to the plan in the first place."); *Westfall v. Bevan*, Civil No. 3:08-CV-0996-D, 2009 WL 111577, *5 (N.D. Tex. Jan. 15, 2009) ("[T]he gravamen and essence of their claims is fraudulent inducement to invest in the Millennium Plan and subsequent concealment of the misrepresentations."); *ANB Bankcorp, Inc. v. Equitable Life Assur. Soc'y of U.S.*, 86 F.Supp.2d 1113, 1114 (N.D. Okla. 2000)

("Plaintiff alleges that, based on defendants' [false] representations ... plaintiff selected one of defendants' plans[.]"). Instead, the Hospital's Second Amended Complaint lists eleven ways in which the Insurance Company was allegedly negligent, and all eleven allegations concern the administration of the Plan and actually mirror the alleged breaches of fiduciary duty under ERISA. SAC ¶ 18 (i.e., comingling funds; wrongly drafting Plan documents; not providing proper disclosures or ascertaining proper provider contracts; and failure to evaluate the economies of Plan, the scope and function of Plan, and needed funds); *Consol. Beef Indus., Inc.*, 949 F.2d at 964 (rejecting the pre-plan argument because plaintiff's "primary concern [was] whether the plan was properly administered").

In sum, reading the Second Amended Complaint as a whole, and assuming factual allegations within it are true, indicates that ERISA preempts the Hospital's negligence claim.[4]

### B. Breach of Fiduciary Duty Claim

■ A reading of the Second Amended Complaint as a whole while assuming factual allegations within it are true indicates that the Hospital has standing to sue the Insurance Company for breach of fiduciary duties under ERISA. ERISA expressly permits one fiduciary to sue another for breaching fiduciary duties. 29 U.S.C. §§ 1132(a)(2) (providing that a civil action may be brought by a "fiduciary for appropriate relief under section 1109 of this title"), 1109(a) (imposing liability on any

fiduciary who breaches ERISA duties); *Harley v. Minn. Mining & Mfg. Co.*, 284 F.3d 901, 904 (8th Cir. 2002). The Hospital and the Insurance Company even agree that one fiduciary can sue another for breach of fiduciary duties. [ECF Nos. 19–1 at 7; 20 at 3]. And the Insurance Company admits that it "is abundantly clear that Count II of the SAC involves one Plan fiduciary suing an alleged co-fiduciary for breach of fiduciary duties, pursuant to ERISA, for alleged losses to the Plan." [ECF No. 19–1 at 6].

The only argument the Insurance Company makes here is that the Hospital "improperly pleads in its individual capacity" instead of as a fiduciary. [ECF No. 19–1 at 7]. But the Insurance Company undercuts its own argument by admitting that it is "abundantly clear" from the Second Amended Complaint the Hospital is suing as a Plan fiduciary. [ECF No. 19–1 at 6]. Indeed, the Insurance Company even points to the Second Amended Complaint as support to indicate that the Hospital is the sponsor of the Plan, [ECF No. 19–1 at 3], and ERISA typically treats involved plan sponsors as fiduciaries. *See Harold Ives Trucking Co. v. Spradley & Coker, Inc.*, 178 F.3d 523, 526 (8th Cir. 1999) ("Because Harold Ives is vested with and exercises discretionary authority and control as the plan sponsor and named administrator, it is a fiduciary ...").

### C. Jury Trial Under ERISA

■ The Hospital brings a section 502(a)(2) claim and demands a jury trial under the Seventh Amendment.[5] [ECF No.

---

4. The Hospital argues that it also brought "a common law claim for breach of fiduciary duty" as well as an ERISA breach of duty claim. [ECF No. 20 at 8 n.1]. It then argues that the common law breach of fiduciary duty claim is not preempted for the same reasons the negligence claim is not preempted. *Id.* Since ERISA preempts the Hospital's negligence claim, as explained, ERISA also

preempts the Hospital's common law breach of duty claim for the same reasons.

5. A party may also rely on congressional intent to establish a right to a jury trial. *See White v. Martin*, Civil No. Civ. 99–1447(JRT/FLN), 2002 WL 598432, at *1 (D. Minn. Apr. 12, 2002) ("The right to a jury trial in statutory actions such as this is derived from two sources: congressional intent, ei-

20 at 11]. Whether a right to a jury trial exists pursuant to the Seventh Amendment depends on "the nature of the issue to be tried rather than the character of the overall action." *Ross v. Bernhard*, 396 U.S. 531, 538, 90 S.Ct. 733, 24 L.Ed.2d 729 (1970); *In re Vorpahl*, 695 F.2d 318, 322 (8th Cir. 1982) ("The right to a jury trial under the seventh amendment depends on the nature of the issue to be tried."). A legal claim obtains a jury trial, an equitable claim does not. *In re Vorpahl*, 695 F.2d at 322.

The Eighth Circuit has expressly held that there is no right to a jury trial for ERISA claims under sections 502(a)(1)(B) and 502(a)(3). *Id.; see also Langlie v. Onan Corp*, 192 F.3d 1137, 1141 (8th Cir. 1999); *Williams v. Sw. Bell Corp.*, Civil No. 96-3884A, 1997 WL 540951, at *1 (8th Cir. Sept. 3, 1997); *Houghton v. SIPCO, Inc.*, 38 F.3d 953, 957 (8th Cir. 1994). The court relied on Seventh Circuit case law and reasoned that "[traditionally], claims for present and future pension benefits, such as petitioners', have been viewed as equitable in nature and triable by a court." *In re Vorpahl*, 695 F.2d at 321, 322. Although addressing specifically sections 502(a)(1)(B) and 502(a)(3), the court repeatedly used broad language in its reasoning that suggests any claim brought under section 502 does not go to a jury. *Id.* at 322 ("[W]e conclude that a jury trial is not required under section 502."). This broad language would presumably also include the Hospital's section 502(a)(2) claim.

However, despite the broad language, the Eighth Circuit has not directly addressed whether the same absence of a jury trial applies specifically to section 502(a)(2) of ERISA. *See Hellman v. Catalado*, Civil No. 4:12CV02177 AGF, 2013 WL 4482889, at *3 (E.D. Mo. Aug. 20,

2013) ("[T]here is no binding precedent directing either the grant or denial of a jury trial under 29 U.S.C. § 1132(a)(2)."). In filling this gap, district courts within the Eighth Circuit have split. Some district courts allow jury trials for section 502(a)(2) claims. *Hellman*, 2013 WL 4482889, at *5; *Kirse v. McCullough*, Civil No. 04-1067-CV-W-SOW, 2005 WL 6797091, at *3 (W.D. Mo. May 12, 2005); *Utilicorp United Inc. for Benefit of Utilicorp United Inc. Emp. Ben. Plans Master Trust v. Kemper Fin. Servs., Inc.*, 741 F.Supp. 1363, 1367 (W.D. Mo. 1989); *Cedar Rapids Pediatric Clinic Emps. Pension Plan & Trust v. Cont'l Assur. Co.*, Civil No. 86-5192, 1988 WL 216169, at *1 (W.D. Ark. July 25, 1988). Other district courts disallow jury trials under section 502(a)(2). *White*, 2002 WL 598432, at *4; *Dasler v. E.F. Hutton & Co., Inc.*, 694 F.Supp. 624, 627 n.2 (D. Minn. 1988); *Browning v. Grote Meat Co.*, 703 F.Supp. 790, 795 (E.D. Mo. 1988); *Hollenbeck v. Falstaff Brewing Corp.*, 605 F.Supp. 421, 431 (E.D. Mo. 1984); *Rausch v. Damon*, Civil No. 83-1161-CV-W-8, 1984 WL 3648, at *3 (W.D. Mo. Sept. 5, 1984); *Kahnke v. Herter*, 579 F.Supp. 1523, 1528 (D. Minn. 1984) ("Based upon its analysis of historical custom and the remedy sought, the court concludes that there is no seventh amendment right to a jury trial in ERISA actions brought under § 502(a)(2).").

The difference between the district courts' decisions appears to be the similarity between the section 502(a)(2) breach of fiduciary duty claim and an equitable request for benefits under an ERISA plan. Thus, district courts that allow jury trials characterize the breach of duty claim as legal in nature because such claims merely hold defendants accountable to the plan for

---

ther explicit or implicit, and the Seventh Amendment."). However, the Hospital does not argue based on congressional intent. *See*

[ECF No. 20 at 11 (mentioning merely right to jury trial under the Seventh Amendment)].

losses caused by the breach of duty. *See, e.g., Hellman*, 2013 WL 4482889, at *4 ("Plaintiff is not requesting that Defendants restore to the Plan 'particular funds' now in the Defendants' possession. Rather, Plaintiff seeks to hold Defendants personally liable for money damages as compensation for losses to the Plan."); *Kirse*, 2005 WL 6797091, at *3. On the other hand, district courts that do not allow jury trials characterize the breach of duty claims as equitable in nature because the money recovered by the plan is at least in part related to the distribution of benefits, essentially turning a recovery for a loss due to a breach of duty into a recovery of benefits the Eighth Circuit has ruled to be equitable. *See, e.g., Wengert v. Rajendran*, Civil No. 8:15CV366, 2016 WL 827754, at *4 (D. Neb. March 2, 2016) ("Similar to the employees' claims in *Vorpahl*, the plaintiff's breach of fiduciary duty claim is a claim for failure to pay benefits under the terms of an ERISA-governed plan."); *Hollenbeck*, 605 F.Supp. at 431 ("[T]he issue whether Falstaff breached its fiduciary duty is integrally dependent upon the question whether plaintiff is entitled to the benefits of the CBS Plan—an essentially equitable question."); *Kahnke*, 579 F.Supp. at 1528 ("The remedy seeking payment of funds into the plan for distribution to participants in the shares set by the plan is clearly an equitable remedy.").

■ Here, the Hospital has a right to a jury trial for its section 502(a)(2) breach of duty claim for three reasons. First, the split of authority creates a questionable case in regard to whether a right to a jury trial exists. And "the strong federal policy favoring jury trials provides impetus for finding the right to a jury trial in questionable cases." *Bower v. Bunker Hill Co.*, 675 F.Supp. 1254, 1262 (E.D. Wash. 1986); *Kemper Fin. Servs., Inc.*, 741 F.Supp. at 1367. Second, the Hospital's request for damages does not concern receipt of benefits under the Plan. Instead, the benefits

have already been paid, and the Hospital is merely attempting to recover overpayments the Plan was forced to make due to the Insurance Company's alleged breach of duty. SAC ¶ 26. Essentially, it seeks "monetary relief for all losses [the] plan sustained as a result of the alleged breach of fiduciary duties" which is "the classic form of *legal* relief." *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 255, 113 S.Ct. 2063, 124 L.Ed.2d 161 (1993). The remaining losses are similarly unconnected to distribution of benefits. *See* SAC ¶¶ 14, 22–24 (damages due to comingling of assets, improper funding of the Plan, and failure to provide required disclosures, which resulted in a Department of Labor investigation). This makes the Hospital's section 502(a)(2) claim legal in nature and deserving of a jury trial. *See Kirse*, 2005 WL 6797091, at *3; *Cont'l Assur. Co.*, 1988 WL 216169, at *1. Finally, the Insurance Company does not provide any pushback. Without acknowledging the split within the Circuit, it merely cites the Eighth Circuit's broad language in precluding jury trials for section 502(a)(1)(B) and 502(a)(3) claims and does not explain the inapplicability of that language to the section 502(a)(2) claim at hand. [ECF No. 19–1 at 8].

### D. Compensatory and Punitive Damages Under ERISA

■ The Hospital's request for compensatory and punitive damages, as pled, must be stricken. The Hospital brings its breach of duty claim under section 502(a)(2) of ERISA, 29 U.S.C. § 1132(a)(2). Section 502(a)(2) permits a fiduciary to sue "for appropriate relief under section 1109." Section 409(a), 29 U.S.C. § 1109(a), in turn, allows suit against a fiduciary who breached ERISA-imposed duties to recover "any losses to the plan resulting from each such breach" and "other equitable or remedial relief as the court may deem appropriate." The U.S. Su-

preme Court has made clear that section 502(a)(2), in conjunction with section 409(a), does not "authorize any relief except for the plan itself." *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 144, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985); *see also LaRue v. DeWolff, Boberg & Assocs., Inc.*, 552 U.S. 248, 256, 128 S.Ct. 1020, 169 L.Ed.2d 847 (2008) (stating that section 502(a)(2) "does not provide a remedy for individual injuries distinct from plan injuries"); *Braden*, 588 F.3d at 593 ("It is well settled, moreover, that suit under § 1132(a)(2) is brought in a representative capacity on behalf of the plan as a whole and that remedies under § 1109 protect the entire plan." (internal quotation marks omitted)). Therefore, the Hospital's request to recover damages for itself cannot stand. Instead, the Hospital must plead in a representative capacity on behalf of the Plan as a whole to recover relief only for the Plan itself.

■ Additionally, the relief to the Plan itself under section 502(a)(2), in conjunction with section 409(a), includes compensatory damages but not punitive damages. Section 409(a) expressly allows compensatory damages. 29 U.S.C. § 1109(a) (allowing recovery of "any losses to the plan resulting from each such breach"); *Mertens*, 508 U.S. at 255, 113 S.Ct. 2063 (characterizing "monetary relief for all losses their plan sustained as a result of the alleged breach of fiduciary duties" as compensatory damages). No controlling case has definitively precluded punitive damages recoverable by the plan itself. *See Russell*, 473 U.S. at 144 n.12, 105 S.Ct. 3085 (precluding punitive damages under section 409(a) for an individual beneficiary but expressly leaving unaddressed the issue of punitive damages for the plan itself); *Brant v. Principal Life & Disability Ins. Co.*, 6 Fed.Appx. 533, 535 (8th Cir. 2001) ("*[I]ndividual ERISA plan participants* have no right of action for recovery of extra-contractual compensatory or puni-

tive damages for breach of a fiduciary duty." (emphasis added)). However, the weight of authority strongly suggests that punitive damages are unavailable under section 409(a) for the plan itself. *See Howe v. Varity Corp.*, 36 F.3d 746, 752 (8th Cir. 1994) (addressing an ERISA breach of fiduciary duty claim and stating that "[o]nly equitable relief, as opposed to damages, is available under ERISA, and punitive damages are not, by any stretch of the imagination, equitable relief."); *Dependahl v. Falstaff Brewing Corp.*, 653 F.2d 1208, 1216 (8th Cir. 1981) (stating in dicta that "[w]e do not think punitive damages are provided for in ERISA"); *Kemper Fin. Servs., Inc.*, 741 F.Supp. at 1368 (striking punitive damages for the plan under section 409(a)); *Rausch*, 1984 WL 3648, at *4 (striking punitive damages under section 502(a)(2)). And the Hospital does not argue otherwise. [ECF No. 20 at 10 (arguing only why compensatory damages are available under ERISA)]. Therefore, the Hospital must sue on behalf of the Plan to recover for the Plan compensatory damages the Plan itself suffered due to any breach of duty, and the Hospital cannot recover punitive damages.

## IV. CONCLUSION

Resolution of the motion at issue without oral argument is appropriate. *See* LR 7.c. For the foregoing reasons, the Insurance Company's Motion to Dismiss, [ECF No. 19], is GRANTED in part. Accordingly, the Hospital's negligence claim is DISMISSED and its request for compensatory and punitive damages is STRICKEN. The Hospital is GRANTED leave to amend the Second Amended Complaint to comply with this Court's analysis regarding the requested damages. The amendment must ensure that the Hospital pleads that it, as a fiduciary, sues on behalf of the Plan to recover losses to the Plan itself as a result

of the Insurance Company's breach of fiduciary duties under ERISA.

IT IS SO ORDERED.